**STATE of Iowa, Appellee,**

v.

**Albert Leo GALVAN, Appellant.**

**No. 61896.**

Supreme Court of Iowa.

Oct. 15, 1980.

Rehearing Denied Nov. 6, 1980.

Allan H. Rauch, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Selwyn L. Dallyn, Asst. Atty. Gen., Dan L. Johnston, Polk County Atty., and James W. Ramey, Asst. Polk County Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, HARRIS, McCORMICK and LARSON, JJ.

HARRIS, Justice.

This appeal, following defendant's conviction of first degree murder in violation of section 690.2, The Code 1977, challenges the sufficiency of evidence and the admissibility of certain evidence. We reverse the trial court.

The charge against Galvan was based on a theory of aiding and abetting in the brutal murder of William Turk in Polk County on October 5, 1977. Two others, Phillip Benito Cuevas and Mary Ellis Cuevas, were also involved. Phillip Cuevas' conviction of Turk's murder was affirmed in *State v. Cuevas*, 288 N.W.2d 525 (Iowa 1980). We affirmed Mary Cuevas' conviction of another murder in *State v. Cuevas*, 281 N.W.2d 627 (Iowa 1979).

Taking the evidence offered in this case in the light most consistent with the verdict the following facts appear. Sometime during the night of October 5, 1977, William Turk died of multiple skull fractures. These fractures were inflicted by a blunt instrument. Turk's hands and feet had been bound with electrical cord. Turk had also been repeatedly stabbed.

Galvan's former wife, Mrs. Jenny Perez, testified that on October 5, 1977, she, Galvan, and their two daughters were residing together at 605 Maple Street, West Des Moines, Iowa. At about 10:00 p. m. that evening all four were at home. Galvan received a telephone call from Phillip Cuevas. Upon receiving the call Galvan told Mrs. Perez he was going to pick up Phillip Cuevas and Cuevas' wife Mary at Galvan's other house in Des Moines. So saying he left at approximately 10:15, taking with him his youngest daughter, then age two.

Mrs. Perez said that Galvan returned at approximately 11:00 p. m. Mrs. Perez had tried without success to phone defendant at the other house during the 45 minutes he

had been absent. When he returned Galvan told Mrs. Perez the Cuevases were getting out of the car. When they did so and came into the house they proceeded directly to the bathroom. While the Cuevases were in the bathroom, Galvan asked Mrs. Perez if she had an extra pair of pants that Mary might use. Mrs. Perez provided a pair of green slacks for Mary. After the Cuevases finished in the bathroom, they asked Mrs. Perez for a paper sack. When it was provided they filled it with clothing and placed it outside and placed lighter fluid on it. Later, as Mrs. Perez was preparing for bed, she noticed blood spots inside the lavatory in the bathroom used by the Cuevases. There had been no blood spots on the lavatory before the time the Cuevases were there.

At about midnight the Cuevases left. Galvan remained. Mrs. Perez noticed that the Cuevases left in a red and white car. Later it was determined this car was owned by the victim, William Turk.

Over defense counsel's objections, Mrs. Perez testified that two days after these events she observed her two year old daughter, the one who had accompanied the defendant, behaving in a way that was, for the child, unique. The child had taken a belt from her mother's robe and bound her own hands with it. Then she made several gestures as if beating her own chest.

Also over objections, Mrs. Perez was allowed to testify that, on the day before she testified, some five months after the October events, the same daughter had an adverse reaction to a television cartoon. In the cartoon a mouse was shown tied up and this caused the daughter to cry.

We shall consider the assignments in reverse order.

I. Mrs. Perez's testimony of her daughter's conduct was objected to as irrelevant, immaterial, and incompetent hearsay and unduly prejudicial. On appeal defendant argues most strongly that it is prejudicial hearsay. The State first defends against the objection by asserting the testimony is not hearsay.

The argument starts with a definition of hearsay: "[H]earsay [is] a statement, other than one made by a declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *State v. Leonard*, 243 N.W.2d 887, 890 (Iowa 1976).

■ In former times it was sometimes argued that only oral or written statements could constitute hearsay. Assertive conduct, such as Mrs. Perez described, was thought by many authorities to fall outside hearsay's definition. V Wigmore on Evidence, § 1363, footnote 1; McCormick's Handbook of the Law of Evidence § 250 (2d ed. E. Cleary 1972). In our view, however, assertive conduct, as well as oral or written statements, can be hearsay. In *State v. Miller*, 204 N.W.2d 834, 840 (Iowa 1973), we quoted with approval what is now Federal Rule of Evidence 801(a): "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion." The evidence of the child here was offered in the belief that the child intended to assert what she had seen. Accordingly, it makes no difference in our determinations that the assertion offered was of the child's conduct, rather than her statement.

■ We look to a statement's purpose in deciding whether it is hearsay. *State v. Horn*, 282 N.W.2d 717, 724 (Iowa 1979). The State then argues:

The testimony of Jenny Perez concerning her daughter's conduct was offered to prove that the child had knowledge of the fact that someone had been bound and stabbed, not to prove that the victim was bound and stabbed. As such, the Perez testimony is part of the State's circumstantial evidence, from which a reasonable juror could infer from the fact of the young child's conduct that she had seen the stabbing of someone who was tied up . . . .

The State cites McCormick, *supra*, § 249 at 591 92, and the case of *Bridges v. State*, 247 Wis. 350, 19 N.W.2d 529 (1945), in support of its position. Under these authorities "circumstantial nonassertive use of ut-

terances to show a state of mind," rather than to prove the truth of the matter asserted often falls outside the definition of hearsay. McCormick, *supra*. We subscribe to the principle but think it does not apply in this situation.

■ We think the little girl's verbal act was in fact being offered to prove the truth of the matter asserted, that is, that someone was stabbed who was tied up. The little girl's knowledge of that fact could have no other relevance or significance in the case. The child's mother could not testify over a hearsay objection that her daughter had told of seeing such a stabbing. It does not change the hearsay characteristic of such testimony to change it into the child's knowledge of having seen it.

McCormick's treatise, in the section cited by the State, goes on to point out the danger of this very same misapplication. *Id.* at 592. It cites the Wisconsin case relied on by the State, *Bridges v. State, supra*, as an example: "However, statements of memory or belief are not generally allowed as proof of the happening of the event remembered or believed, since allowing the evidence would destroy the hearsay rule. For this purpose, knowledge would seem to be indistinguishable from memory and belief, save under unusual circumstances." We therefore conclude the two incidents related by the child's mother were hearsay. It is accordingly necessary to determine whether they were admissible under an exception to the hearsay rule.

II. We should digress to point out that the question is not controlled by the fact that the witness's daughter was undoubtedly not competent to take an oath as a witness. The authorities make it clear that admissibility in such cases does not turn on the competence of the child to take the oath, but on the spontaneity of the utterance or act described. In *State v. Haines*, 259 N.W.2d 806, 810 (Iowa 1977), we considered a challenge to admission of the statements of a two and one–half–year -old child. We said: "We adhere to the view that even though the declarant was a very young child, the trial court was not required

to make further inquiry as to the admissibility of the hearsay testimony." *See also* McCormick, *supra*, § 297 at 708; Wigmore, *supra*, § 1751 (1940) Annot., 83 A.L.R.2d 1368.

■ We next consider whether the conduct of the child falls within the *res gestae* exception. It does if it is: (1) spontaneous and, (2) so close to the transaction as to exclude any presumption of fabrication. Admissibility lies largely within the trial court's discretion. *Haines, supra*, 259 N.W.2d at 810.

■ We find no abuse of trial court discretion in allowing testimony of the child's first conduct. It appears in every way to have been spontaneous and unsolicited. The passage of two days, especially for so young a child, leaves it close enough to the transaction so that the trial court could have believed any presumption of fabrication was excluded.

A separate question is presented on description of the child's later reaction, the one which occurred the day prior to the time Mrs. Perez testified.

We cannot find that the trial court abused its discretion in finding that the second occurrence was spontaneous. Accordingly the first of the two tests for the *res gestae* exception was met. However, we can imagine no way in which the trial court could have found that it was so close to the transaction as to exclude any presumption of fabrication. The occurrence was some four or five months after the event. It was in no way close to the transaction but was most remote to it. Whether it was prompted by the event itself or by something the child saw on television is left entirely to conjecture. We are obliged to hold that admission of Mrs. Perez's testimony of the second event was error.

III. Having found error in admission of the testimony of Mrs. Perez we must determine whether the error was reversible. The State first suggests that the evidence of the second occurrence is largely cumulative. We have held that, where similar testimony was already in the record, admis-

sion of cumulative testimony was not error. *State v. Gartin*, 271 N.W.2d 902, 914 (Iowa 1978). But we think evidence of the second event here was not cumulative. It was not another description of the first occurrence but rather a description of a second and separate occurrence.

■ The erroneous admission of hearsay evidence is presumed to be prejudicial unless the contrary is affirmatively established. *State v. Horn*, 282 N.W.2d 717, 724 (Iowa 1979). We cannot say a lack of prejudice was clearly established.

The case against defendant was circumstantial. There was no direct evidence of his presence at the actual killing. Accordingly any evidence placing him there was extremely damaging to his defense. The purpose of this evidence was to do just that. It placed him at the scene of the crime by showing that his daughter, who accompanied him, was at the scene. The evidence that she was there weighed heavily against him. Two indications that she was there would weigh more heavily than a single indication. It does not change the prejudice that the first indication was admissible and the second was not.

It is suggested that we should find the error harmless by viewing it as a trivial incident in a long and otherwise error free trial. The suggestion calls for us to speculate on the likelihood that the jury would ignore the evidence because of its very nature. The suggestion is that the jury could not have been moved by learning that a little girl cried five months later while viewing a television show. But we think the error cannot be so easily overlooked, especially in view of defendant's other objections to it. His objection also went to the very characteristic by which this suggestion would salvage it: it was not persuasive, i. e., not relevant, not competent, not material. To whatever extent the error we have found could be ignored as harmless, it would be subject to defendant's other challenge to it. Viewed under the test for harmlessness, as we have previously indicated, we cannot ignore it.

We are obliged to hold that admission of the testimony that the defendant's daughter reacted to a television show five months after the murder was reversible error.

■ IV. Defendant also challenges the sufficiency of the evidence against him. He argues that the trial court erred in not granting his motion for directed verdict at the close of the State's evidence. We consider all the evidence, not merely the State's, and apply the following test in reviewing motions for directed verdicts:

> In reviewing these rulings we view the evidence in the light most favorable to the State, without regard to contradiction or inconsistencies and assisted by all reasonable inferences. If there is substantial support for the verdict in the record, the jury verdict is conclusive. [Authority.] We have also said that where the verdict is clearly against the weight of the evidence a new trial should be granted. [Authority.] See present Iowa R.Crim.P. 23(2)(b)(6) (new trial when "verdict is contrary to law or evidence"). We have said that evidence is "substantial" when a reasonable mind would accept it as adequate to reach a conclusion. [Authorities.]

*State v. Robinson*, 288 N.W.2d 337, 338 (Iowa 1980).

The foregoing test applies in cases involving circumstantial evidence as well as those involving direct evidence. *State v. Marti*, 290 N.W.2d 570, 584 (Iowa 1980); *State v. O'Connell*, 275 N.W.2d 197, 204-05 (Iowa 1979).

For the State to prevail on its theory that the defendant aided and abetted the first-degree murder of Turk it must be demonstrated that there is substantial evidence to show defendant "[assented] to or [lent] countenance or approval to the criminal act, either by active participation in it or by in some manner encouraging it." *State v. Jones*, 271 N.W.2d 761, 763 (Iowa 1978).

We think the evidence previously recited makes out a jury question on defendant's guilt. A reasonable juror might infer from the evidence that Turk was murdered between 10:15 p. m. and 11:15 p. m. on the

night in question. The Cuevases were involved in the murder. They later tried to remove the victim's blood from their clothes and were in possession of the victim's automobile on the night in question. The actions of the two–year–old daughter reasonably permit the inference that the young child witnessed the killing and that Galvan did also.

 A juror could believe, from the evidence, that Galvan was no mere spectator. Using the test for aiding and abetting we described in *State v. Lott*, 255 N.W.2d 105, 108 (Iowa 1977), a juror could conclude that the defendant was shown to "associate himself with the venture," that he participated in it as something he wished to bring about, that he sought by his action to make it succeed. This could be inferred from defendant's cooperation with the Cuevases, furnishing them transportation before possession of the victim's car was taken, and assisting them in cleaning the blood stains and securing other clothing.

There was substantial evidence to support the verdict. There was no error in the trial court's ruling on defendant's motion for directed verdict.

By reason of the error mentioned in division II hereof, the judgment of the trial court is reversed and the case remanded for a new trial.

REVERSED AND REMANDED.

All Justices concur, except REYNOLD-SON, C. J., who concurs in the result.