556 So.2d 808 (1990)
Ernest RANDOLPH, Appellant,
v.
STATE of Florida, Appellee.
No. 89-40.
District Court of Appeal of Florida, Fifth District.
February 15, 1990.
James B. Gibson, Public Defender, and Barbara L. Condon, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Bonnie Jean Parrish, Asst. Atty. Gen., Daytona Beach, for appellee.
PETERSON, Judge.
Defendant, Ernest Randolph, raises two points on appeal. His first contention is that the trial court erred in denying his motion for mistrial because of wrongful prosecutorial comments, and the second is that a sentence was imposed above the recommended guidelines without written reasons to support it.
The first point is further divided into two components. The first is the comment by the prosecutor during closing arguments:
Here's Officer Louis and Officer Haney. You heard them say that they are permanently stationed out in that area. You heard them say that they knew the defendant. What would running off would [sic] have done? The mere fact that he stayed doesn't really account to anything.
The second is the comment made by the prosecutor during his opening statement:

*809 The purse which was stolen off Ms. Maley's desk was located and it was found in the field between where the school is located and where the defendant was arrested a short time later.
The defendant argues that the evidence at trial did not establish that the officers knew appellant and that the clear implication by the prosecutor's comment in the closing argument was that appellant had prior contact with the police and that a prejudicial inference arises that appellant had a criminal record. The evidence reflects that Officer Louis stated on cross-examination, "I know Mr. Randolph," and that both officers had been assigned to duty in the area in which the defendant was identified by the victim. While the prosecutor may have embellished upon the evidence during the stress of trial, the embellishment does not constitute such an error as to be classified as fundamental. See Clark v. State, 363 So.2d 331, 335 (Fla. 1978). It cannot be accepted as a foregone conclusion that a jury will infer that, when a police officer knows a person, that person has been suspected as a criminal or has a criminal record.
It should also be noted that the defendant did not object to the misstatement or move for a mistrial until after the conclusion of the State's closing argument. While the motion for mistrial need not necessarily be made immediately following the remark, we analyze State v. Cumbie, 380 So.2d 1031 (Fla. 1980), to require that at least an objection should be made to the remark at the time it occurs followed by a motion for mistrial no later than the end of the prosecutor's closing statement. Since no objection was made at the time of the offending comment, such silence is considered an implied waiver. Clark v. State, 363 So.2d 331 (Fla. 1978).
The other comment by the prosecutor was delivered during opening statement. There is agreement that no evidence was presented to establish the location of recovery of the purse. The defendant asserts that both this comment and the comment relating to the knowledge of the defendant by the police officers bolstered what the defendant feels was a weak identification by the victim. The only weakness in the identification seems to be in the failure of the victim to identify the defendant from a lineup six months after the event. Although she eliminated three persons from the six-person lineup, she was not able to eliminate the remaining three, and the defendant was one of them. The victim did see the defendant on three occasions on the day of the crime: once, when her purse was snatched from her desk in a school classroom; once, as she saw him running across a school yard immediately after the snatching; and, again, no more than 30 minutes after the snatching when she identified the defendant and an accomplice who were in a group of males standing near a building.
Defendant's objection to the comment regarding the location of the purse recovery was made at the conclusion of the State's case in chief. The court's decision on the motion for mistrial was reserved by the court, and, of course, the defendant could not have made the motion earlier since he could not anticipate that the State would omit the evidence of the asserted location.
Since there seems to be agreement that the location of the recovery of the purse was not proven after the prosecutor indicated the location in his opening statement, is this omission or perhaps misstatement enough to cause a mistrial? A broader way of stating the issue is whether the State must prove every assertion in an opening statement or face a mistrial if the prosecutor overlooks proving the assertion through the introduction of evidence during the State's case. A review of the record in this case requires a negative answer. The trial court gave the following cautionary instruction which addressed the problem without drawing the jury's attention to the specific statements:
While they're approaching the bench, ladies and gentlemen, also let me remind you that what the attorneys said during their opening statements and their closing arguments was not evidence. If they have said something that you don't recall, rely upon your collective memory to *810 determine what the evidence presented was because they do their best to take notes; but they have to listen, take notes, and plan their own trial portion. So sometimes they may not hear things that were said or may think they heard things that were not said.
So you rely upon your own collective memory in determining what the facts were.
A mistrial is appropriate only when the error is so prejudicial as to vitiate the entire trial. Duest v. State, 462 So.2d 446 (Fla. 1985). When there is no reasonable possibility that the error contributed to the conviction, the error is harmless. State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986). There is no reasonable possibility that the comments of the prosecutor affected the outcome of the case or that they were so prejudicial as to vitiate the entire trial. The testimony by the victim was adequate to identify the defendant, and testimony by the police officers bolstered the victim's testimony.
The second point contended by the appellant involves the sentence imposed by the trial judge, pursuant to Rule 3.701(d)(1), Florida Rules of Criminal Procedure, in which one score sheet was used for all offenses pending before the court. The score sheet reflected the following history of the defendant:
May 16, 1986 Defendant entered a plea of guilty, was adjudicated guilty of two counts of robbery and sentenced to 2 years of community control.
June 14, 1988 Defendant was arraigned for violation of the community control imposed on May 16, 1986, for failure to pay monetary conditions of community control, and for committing offenses of robbery, possession of cannabis, and burglary of a structure.
September 15, 1988 Defendant was found guilty by a jury of robbery, possession of cannabis, and burglary of a structure (These offenses were the same offenses charged in the violation of community control on June 14, 1988.).
As directed by Rule 3.701(d)(1), one score sheet was used to sentence the defendant for the 1986 offenses, as well as the new 1988 offenses. The category three score sheet reflected 50 points for the primary 1988 offense, and seven points and one point for the respective third degree and misdemeanor additional 1988 offenses at conviction. The two 1986 second degree offenses were given 63 points. Seventeen additional points were given for legal restraint at time of conviction and seven points for slight victim injury, for a total of 145 points. These points translate to a recommended range of 5 1/2 to 7 years incarceration or 7 to 9 years incarceration with the "bump up" pursuant to Rule 3.701(d)(14) since the defendant was under community control at the time the new offenses were committed.
The defendant received a concurrent sentence of 9 years incarceration on the two 1986 charges with 2 years and 167 days credit for time served, and 9 years concurrent incarceration on the second degree felony with 225 days credit for time served.[1] The defendant argues that, while the sentence for the 1986 offenses are proper, the court erred in imposing a sentence on the 1988 offenses in excess of the recommended range of 7 years.[2] The attempt to have the sentence for the 1988 offenses reduced to 7 years is noteworthy when the credit for time served is used to reduce the period of incarceration. If the attempt to reduce the sentence to 7 years were successful, the time left to serve on the 1988 charges would be 6 years and 140 days rather than 8 years and 140 days. The time remaining to be served on the 1986 charges is 6 years and 198 days. Although the use of one score sheet is prescribed, the credit for time served is not combined for the new and old offenses. Indeed, it would be inappropriate to allow *811 credit for time served prior to the commission of the new offense.
The problem with defendant's argument is that the system of scoring new offenses with original substantive offenses for which the defendant was under legal constraint was analyzed in Peters v. State, 531 So.2d 121 (Fla. 1988), a case not recognized by defendant in his brief. A review of that case would have revealed that, while the supreme court agreed that the language of Rule 3.701(d)(14) may be ambiguous with respect to whether the one cell upward departure is to be imposed for the new crime for which the probation for the old crime was revoked, the increase is allowed. The opinion expressed the philosophy of the guidelines:
If there is any overriding purpose behind the sentencing guidelines, it is that the guidelines be used to punish repeat offenders more severely than first time offenders. Under the guidelines, Peters is precisely the type of criminal defendant for whom harsher treatment was intended. His persistent habit of selling marijuana to police officers denotes a lack of ability or desire to conform his conduct to the requirements of law.
Id. at 123.
The instant case demonstrates that the "one score sheet rule" also imposes harsher treatment on repeat offenders on probation when "time served" credits are allowable in computations of the period of incarceration to be served. The repeat offender on probation can be sentenced with the "bump" for the new offense, but he does not receive the benefit of credit for time served for the old offense.
The judgment and sentence of the trial court are:
AFFIRMED.
COWART and HARRIS, JJ., concur.
NOTES
[1] The sentences for the third degree felony and misdemeanor are not important for purposes of this appeal.
[2] The "permitted range" of 4 1/2 to 9 years was not adopted until July 1, 1988; defendant's offenses were committed on April 11, 1988.