W. SHARP, Judge,
concurring specially.
I concur in the result. I write to explain my reasons because the error in failing to admit certain testimony at trial should be addressed. The testimony of the victim’s sister (which the defense was successful in excluding at trial) should have been admitted as an infant’s “excited utterance” [1] as proffered by the state. Mention of it in the state’s opening statement was therefore not reversible error, as defense counsel argued on appeal.[2]
Haws was charged with the sexual battery of six year old LaDasha Beasley. La-Dasha (also called Dasha) is the daughter of Haws’ cousin, Veronica Beasley. LaDa-sha’s little sister Tasheena (also called Sheena), age four, and her brother, Ted-rick, thirteen years old, were also present at the time of the incident.
In his opening statement, the prosecutor said:
And that day when [Veronica] checked on the kids, the kids were home, Tedrick, Tasheena and La’Dasha were home, and then also Willie was there, William Jefferson Haws.
Willie, you will learn, is Veronica, these children’s mother, second cousin, and him being there caused her no alarm at all. He’d been around the house and been around the kids taking them out for ice cream, taking them to church, and it wasn’t that big of a deal to her. It was fine that he was there.
So she checked on them, gave them some chores, and then she went back to work.
Well, after she’d gone back to work and been back to work for awhile, the kids were out playing in the yard, Ted-rick was in [sic] inside watching TV, and the Defendant was still there.
The Defendant then went into the laundry room. He had Dasha come into the laundry room with him. He pulled down the front of his jogging shorts that he had, jogging pants that he had on, exposed his penis to her and then grabbed her by the back of the head and forced her head down to his crotch and placed his penis in her mouth.
Now while this was going on, the little four year old, little Sheena was outside playing still.
Now, Sheena’s got something that she likes to do. She’s not supposed to do it, but she loves to do this. She likes to play on the back door screen.
Now, you’re going to find out that the laundry room is just outside the back door. The door to the laundry room was half open when this was happening to this little girl, and little Sheena got on that screen door and started pushing off. She likes to get on there, cross her feet over and swing on this door, and when she did that, when she swung out to where she could see into the laundry room, she saw her little sister’s mouth on this man’s penis. It startled her, she immediately got off that door and went directly to her brother to tell him what she saw.
Her brother then immediately went to the laundry room, and the Defendant was in there, and so was little Dasha. The Defendant had turned his back to the door when Tedrick came up to the door, and he said to him, “hey, what’s going on? What’s going on in here?” And when the Defendant turned around, Tedrick could see that the Defendant, his penis was erect. He could see that through his jogging pants.
He told him to leave, told him to get out of there, that he was going to tell his mother, and the Defendant left ...
Defense counsel moved for a mistrial on the ground that Sheena had been found not to be a competent witness and the prosecutor did not intend to call her as a witness. The prosecutor explained that he planned to offer Sheena’s statement through her brother’s testimony. The trial court reserved ruling.
When Tedrick was called as a state witness, he was asked what Sheena told him when she appeared before him in an excit *1127 ed and scared state. She came to summon him to the laundry room where Haws was in the process of sexually battering LaDa-sha. After extensive discussion outside the presence of the jury, the court ruled that Sheena’s statement was not admissible as an exception to the hearsay rule (excited utterance or spontaneous statement) because she was only four years old and was not competent to testify in court. However, the court did rule that Tedrick would be allowed to testify that Sheena sought him out and told him something that caused him to go to the laundry room.
Tedrick testified that Sheena came to him and told him “something.” As a result of what she said, he went to the laundry room to see “what was going on.” When he got there he found Haws and Dasha. When Haws turned around towards Ted-rick, Tedrick saw Haws had an erection. Tedrick told Haws he was going to tell his mother and Haws left.
At the conclusion of the state’s case, defense counsel renewed its motion for a mistrial on the ground the prosecutor’s opening statement referenced what Sheena saw and told Tedrick. The trial judge denied the motion but it cautioned the prosecutor not to argue in closing that Sheena observed the sexual battery. The judge said:
[I]t would be a shame to have this case reversed just because of a remark like that when you got all kinds of other evidence that the jury can rule on, certainly be, over kill.
Indeed, LaDasha testified explicitly on video tape as to the sexual battery wrought on her by Haws. Tedrick’s testimony corroborated its “aftermath.” Most sexual battery cases lack other “independent” eyewitness accounts. The evidence in this case against Haws was stronger than most.
In addition, there was no indication that the prosecutor acted in bad faith by referencing in his opening statement what Sheena told her brother. Both LaDasha and Tedrick testified Sheena was in a position to have observed the battery, and the prosecutor hoped to have the statement admitted through the testimony of another witness. Under these circumstances, the prosecutor’s reference to Sheena’s statement in his opening remarks did not constitute grounds for mistrial.
In Randolph v. State, 556 So.2d 808 (Fla. 5th DCA 1990), the prosecutor told the jury in his opening statement that a purse allegedly stolen by Randolph was later recovered in the área where Randolph was arrested. No evidence, however, was presented at trial to establish the location of the recovery of the purse. On appeal, Randolph argued that the trial court should have granted his motion for mistrial based on this improper comment. This court rejected Randolph’s argument explaining as follows:
Since there seems to be agreement that the location of the recovery of the purse was not proven after the prosecutor indicated the location in his opening statement, is this omission or perhaps misstatement enough to cause a mistrial? A broader way of stating the issue is whether the State must prove every assertion in an opening statement or face a mistrial if the prosecutor overlooks proving the assertion through the introduction of evidence during the State’s case. A review of the record in this case requires a negative answer. The trial court gave the following cautionary instruction which addressed the problem without drawing the jury’s attention to the specific statements:
While they’re approaching the bench, ladies and gentlemen, also let me remind you that what the attorneys said during their opening statements and their closing arguments was not evidence. If they have said something that you don’t recall, rely upon your collective memory to determine what the evidence presented was because they do their best to take notes; but they have to listen, take notes, and plan their own trial portion. So sometimes they may not hear things that were said or may think they heard things that were not said.
*1128 So you rely upon your own collective memory in determining what the facts were.
A mistrial is appropriate only when the error is so prejudicial as to vitiate the entire trial. Duest v. State, 462 So.2d 446 (Fla.1985). When there is no reasonable possibility that the error contributed to the conviction, the error is harmless. State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). There is no reasonable possibility that the comments of the prosecutor affected the outcome of the case or that they were so prejudicial as to vitiate the entire trial. The testimony by the victim was adequate to identify the defendant, and testimony by the police officers bolstered the victim’s testimony.
556 So.2d at 809-810.
In the present case, the prosecutor did not assert in his opening statement that Sheena would testify. Rather, he outlined the scenario which he intended to present through Tedrick’s testimony. The trial court eventually ruled that Tedrick could not refer to Sheena’s statement but that ruling came after lengthy argument, submission of legal memoranda and proffer of testimony. The trial court even conducted an examination of Sheena and concluded she was (at the time of the trial) a competent witness.[3] There was no indication of bad faith on the part of the prosecutor and the trial judge made no such finding. The jurors were instructed at least three times that the statements of the attorneys are not evidence. As in Randolph, it appears in this case that there is no reasonable possibility that the comments of the prosecutor affected the outcome of the case or that they were so prejudicial as to vitiate the entire trial.
This conclusion is further supported by Rutledge v. State, 374 So.2d 975 (Fla.1979), cert. denied, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980) and Spaziano v. State, 429 So.2d 1344 (Fla. 2d DCA 1983). In Rutledge, the defendant was charged with two counts of murder and two counts of assault with intent to commit murder. In his opening statement, the prosecutor referred to a tape recording of a telephone call made by the victims. The tape recording was later ruled inadmissible in the guilt/innocence portion of the trial. Prior to the prosecutor’s opening argument, the judge instructed the jury that opening statements are not to be considered as evidence. At the beginning of his opening argument, the prosecutor reiterated that nothing he said was to be considered evidence. The defense, in opening argument, also made references to the tape. In these circumstances, the Florida Supreme Court found no reversible error in the prosecutor’s reference to the tape.
In Spaziano, the defendant was charged with theft of a motor vehicle. During opening argument, defense counsel told the jury that they would hear testimony that the defendant had borrowed the car in question. However, the defendant rested without presenting any evidence. On appeal, the court held that a mistrial was not warranted in these circumstances. The court noted that the misfortune complained of in this case, that is, defense counsel informing the jury that certain evidence would be presented and then not presenting the evidence, did not render continuation of the trial impossible or unreasonably prejudicial to the substantial interests of the judicial process or to the state. Defense counsel’s opening statement did not constitute evidence and the jury was so informed. The court noted that the state could have protected itself from the possibility that the jury might consider defense counsel’s remarks as evidence by reminding the jury in its closing argument that representations by counsel may not be considered as evidence. That was clearly and repeatedly done in this case.
An additional reason this case should not be reversed is because, the trial court erred by excluding Sheena’s statement as proffered through Tedrick’s testimony. The disqualifications of infancy, which were used to bar admission of Sheena’s statement in this case, should not be used to *1129 exclude statements offered as excited utterances or spontaneous statements[4] because those exceptions to the hearsay rule by their specific requirements obviate the usual sources of untrustworthiness for children’s testimony. Wigmore Vol. VI § 1751, p. 223 (1976). See State v. Bauer, 146 Ariz. 134, 704 P.2d 264 (Ariz.App.1985); People v. Orduno, 80 Cal.App.3d 738, 145 Cal.Rptr. 806 (1978), cert. denied, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979); Lancaster v. People, 200 Colo. 448, 615 P.2d 720 (1980); People v. Miller, 58 Ill.App.3d 156, 15 Ill.Dec. 605, 373 N.E.2d 1077 (1978); State v. Galvan, 297 N.W.2d 344 (Iowa 1980); Bishop v. State, 581 P.2d 45 (Okl.Cr.1978).
In Jackson v. State, 419 So.2d 394 (Fla. 4th DCA 1982), the statement of a three-year-old child, “that man hurt me” made to her mother, shortly after a sexual battery on her by the defendant, was held admissible under section 90.803(2) (excited utterance), although the child was unable to testify at trial because she “simply would not speak.” Sheena was initially disqualified in this case for similar reasons. In a video tape made shortly after the incident, Sheena would not answer questions.
The court in Jackson pointed out that the excited utterance is a long-established hearsay exception, which rests for its reliability on the circumstances under which the declaration is made. The statement must be made close in time to the event prompting it; the event must be sufficiently startling to cause some excitement; it must be made before the declarant has time to contrive or misrepresent; and it must be made while the declarant is still under stress caused by the event.[5]
In all regards, the prosecutor s proffer of Sheena’s statement appears to satisfy the requirements of admission pursuant to section 90.803(2) (excited utterance). Since I conclude Sheena’s statement was admissible as proffered, a reference to it in the state’s opening statement does not constitute prejudical nor reversible error.

. Section 90.803(1) and (2), Fla.Stat. (1989).

. Section 59.041, Fla.Stat. (1989).

. In the light of this finding, it is not clear why Sheena was not called as a witness at the trial.

. Section 90.803(1) & (2), Fla.Stat. (1989).

. See Jano v. State, 510 So.2d 615 (Fla. 4th DCA 1987), approved, 524 So.2d 660 (Fla.1988).