# IN THE COURT OF APPEALS OF IOWA

No. 17-1963
Filed April 3, 2019

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**DAVID JAY NUNO,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Mills County, Mark J. Eveloff, Judge.

　　　　A defendant appeals his conviction for second-degree sexual abuse. **AFFIRMED.**

　　　　Mark C. Smith, State Appellate Defender, (until withdrawal), and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

　　　　Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**POTTERFIELD, Presiding Judge.**

David Nuno appeals his conviction and sentence for second degree sexual abuse in violation of Iowa Code sections 709.1, 709.3(1)(b), and 903B.1 (2017). On appeal, Nuno argues his constitutional right to confront the State's witnesses were violated, the denial of his motion for new trial applied the wrong legal standard, and trial counsel was ineffective for failing to object to hearsay testimony, vouching testimony, and victim impact statements from non-victims.

**I. Background Facts and Proceedings.**

Nuno was accused of sexually touching five-year-old H.R. and eight-year-old L.S. on one occasion in April 2017. H.R. and L.S. live with their maternal grandparents (the Schoenings); H.R.'s uncle; and the uncle's fiancée, Hollingsworth. Nuno was a friend of the children's mother. Nuno was charged with four counts of sexual abuse, two charges involving each of the complaining witnesses, in July 2017. A jury trial was held in September. The district court allowed the complaining witnesses to testify via closed-circuit television. The complaining witnesses, one of Nuno's attorneys, the prosecutor, and the judge were positioned in a room separate from Nuno, his second attorney, and the jury during their testimony. Three of the four counts were submitted to the jury, which returned a guilty verdict on one count of sexual abuse in the second degree involving H.R. The court sentenced Nuno in November to the statutory indeterminate sentence of incarceration for twenty-five years with a 70% mandatory minimum.

Nuno appeals.

**II. Standard of Review.**

We review for errors at law when determining whether the trial court erred in granting the State permission to present the testimony of child witnesses by closed-circuit television. *State v. Rupe*, 534 N.W.2d 442, 444 (Iowa 1995). Constitutional claims, including those based on the Confrontation Clause, are reviewed de novo. *State v. Rogerson*, 855 N.W.2d 495 (Iowa 2014).

"We review a trial court's ruling on a motion for new trial for an abuse of discretion." *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006).

Ineffective assistance of counsel claims are also reviewed de novo. *State v. Straw,* 709 N.W.2d 128, 133 (Iowa 2016). "The defendant may raise the ineffective assistance claim on direct appeal if he or she has reasonable grounds to believe the record is adequate to address the claim on direct appeal." *Id.* "Only in rare cases will the trial record alone be sufficient to resolve the claim on direct appeal." *Id.*

**III. Discussion.**

**A. Right to Confront Witnesses.**

Nuno argues his right to confront his accusers was violated when the district court allowed L.S. and H.R. to testify by closed-circuit television broadcast from a location separate from Nuno's location. The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Iowa Code section 915.38(1)(a) allows a minor to testify via closed-circuit television when testifying in the presence of the defendant would cause trauma and would impair the minor's ability to communicate.

Nuno objected to the State's pre-trial request to use closed-circuit television for the presentation of the child witnesses' testimony. Nuno asserts the State did not lay a sufficient foundation under section 915.38 and *Maryland v. Craig,* 497 U.S. 83 (1990), to justify the lack of face-to-face confrontation. Nuno argues the district court was required, but failed, to make a specific finding that the complaining witnesses' ability to communicate would be impaired by his presence in the same room and that the accommodation was necessary to protect the children from trauma. *See* Iowa Code § 915.38(1)(a) ("[A] court may protect a minor . . . from trauma caused by testifying in the physical presence of the defendant where it would impair the minor's ability to communicate . . . . [S]uch an order shall be entered only upon a specific finding by the court that such measures are necessary to protect the minor from trauma."); *Maryland v. Craig*, 497 U.S. at 857 ("[W]here necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate, the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation.").

*Craig* established a three-part test to determine when alternate procedures are necessary to protect a child witness from trauma, which Iowa courts have regularly applied.

> (1) The trial court must hear evidence and determine whether use of the closed-circuit television procedure is "necessary to protect the welfare of the particular child witness," (2) the trial court must

find that "the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant," and (3) "the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, i.e., more than 'mere nervousness or excitement or some reluctance to testify.'"

*State v. Cuevas*, 08-1344, 2009 WL 3337606, at *9 n.3 (Iowa Ct. App. Oct. 7, 2009) (quoting *Craig*, 497 U.S. at 855–56). The critical inquiry is whether the use of the procedure is necessary to further the important state interest of protecting the child witness. *Craig,* 497 U.S. at 852.

The district court held a hearing on the State's request for accommodation. The State presented testimony of a counselor for each child witness. The children began receiving counselling before the events leading to the charges against Nuno because of the traumas the witnesses experienced when they were removed from their parents' care and because of the underlying reasons for the removal. Neither counselor talked to the witnesses about Nuno or their allegations against Nuno, and neither talked to them about testifying. Both witnesses had given a deposition the week before trial; Nuno was not present in the room where the depositions were taken.

L.S.'s mental-health counselor testified that due to L.S.'s "complex trauma history," she would not be able to verbalize her allegations against Nuno. The mental-health counselor testified L.S. would be traumatized if she was required to testify in Nuno's presence, stating she believed L.S. "would become flooded with trauma symptoms, she would have difficulty with regulating herself, and her presenting symptoms would become more severe." The counselor was not asked and did not state whether she believed L.S. was afraid of being in Nuno's

presence but repeatedly stated she believed L.S. would be traumatized if she was required to testify in Nuno's presence.

H.R.'s mental-health therapist, who had never discussed H.R.'s allegations of sexual assault with the child, testified she believed H.R. would not be able to communicate the events to the jury in Nuno's presence and that Nuno would be a trigger for H.R.'s trauma. H.R.'s therapist testified that H.R. had a history of trauma and stated that "anything could be a trigger for her." She later clarified that Nuno specifically would be a trigger to H.R.'s trauma H.R.'s therapist stated that testifying could be traumatizing to H.R. but that testifying in front of Nuno would cause substantially more trauma.

Nuno contends that because H.R.'s therapist had not discussed the sex-abuse allegations with H.R. and did not know how H.R. would react if Nuno came up in conversation, she could not have known whether testifying in Nuno's presence would traumatize her. He similarly argues L.S.'s mental-health counselor had never seen L.S. in Nuno's presence and, therefore, would not know if she was unable to testify in his presence. Nuno argues that his physical presence specifically must be the trigger for the witness—not just general trauma—in order to satisfy the second factor of the *Craig* test.

The therapists' testimony here emphasized the trauma experienced by the witnesses due to their family upheaval; both characterized the witnesses as emotionally fragile and likely to find it difficult to express themselves in a stressful situation. Neither therapist was able to link the witnesses' difficulty to make statements with the effect of Nuno's presence. But a witness's general emotional fragility does not preclude a finding of necessity under *Craig*—although it is often

combined with a specific fear of the defendant. *See State v. McDonnell*, No. 08-0798, 2009 WL 1492839, at *5 (Iowa Ct. App. May 29, 2009) (finding necessity was shown where therapist testified about witness's statements concerning incarceration of defendant but also testified the witness "might shut down no matter who was present in the courtroom"); *State v. Paulson*, No. 06-0141, 2007 WL 461323, at *5–6 (Iowa Ct. App. Feb. 15, 2007) (finding necessity was adequately shown where therapist described the witness's fear of the defendant specifically but also gave the opinion the complaining witness might have a difficult time answering questions and might shut down even if she were to testify via closed-circuit).

The district court found that the witnesses "would be traumatized by being in the same room as Mr. Nuno when they testified" and that both of the complaining witnesses' mental-health experts testified the witnesses "could testify in front of a jury, just not in front of Mr. Nuno." While the therapists here were unable to link the presence of Nuno specifically to the trauma, they anticipated the witnesses would suffer if required to testify in Nuno's presence, and each counselor knew the witnesses well from a therapeutic relationship and made informed opinions based upon their expertise and knowledge of the witnesses. Unlike the expert in *State v. Richards*, No. 07-0916, 2008 WL 2042615, at *3 (Iowa Ct. App. May 14, 2018), the therapists here presented sufficiently specific testimony directed toward the effect on the witnesses in the context of their present circumstances. The district court's findings indicate its belief in the credibility of the therapists and are supported by the testimony of the therapists. We defer to the district court. The witnesses' ability to communicate

would be impaired and the accommodation was necessary to protect the witnesses from trauma—as testified by the children's therapists. The district court did not err in granting the State's motion for section 915.38 accommodations.

The district court found that the witnesses "would be traumatized by being in the same room as Mr. Nuno when they testified" and that both of the complaining witnesses' mental health experts testified the witnesses "could testify in front of a jury, just not in front of Mr. Nuno." Nuno argues these findings by the district court were insufficient to show the complaining witnesses' ability to communicate would be impaired or that allowing the children to testify in another room was necessary to protect the children from trauma. We disagree. The district court's findings that the witnesses' ability to communicate would be impaired and that the accommodation was necessary to protect the witnesses from trauma is supported by the testimony of the children's therapists. The district court did not err in granting the State's motion for section 915.38 accommodations.

### B. Motion for a New Trial

Nuno argues the district court applied the wrong standard to his motion for a new trial, claiming in part that the verdict was contrary to the evidence presented. In making this decision, the district court is required to weigh the evidence and consider the credibility of the witnesses. *State v. Maxwell,* 743 N.W.2d 185, 192 (Iowa 2008). The district court denied Nuno's motion:

> In regards to the fourth argument, the verdict was not supported by the evidence, basically for a motion for new trial [the] court has to find that the weight of the evidence supported the

> verdict the jury returned in this matter. Once again, [the] court will point out the jury was instructed they could believe part, some or all or none of the testimony of any witnesses that testified in this matter, that obviously the jury found H.R. to be credible. Her testimony in and of itself was sufficient to support a verdict of guilty, as the court denied the defendant's motion for acquittal at the conclusion of the trial also.
>
> [The] court does find at this time the weight of the evidence was sufficient to support the verdict of guilty that was given by this jury and refuses to set it aside on that grounds.

Nuno argues the district court abused its discretion by applying the wrong standard to his motion because it did not independently evaluate the credibility of the witnesses or weigh the evidence. *See State v. Ellis,* 578 N.W.2d 655, 658–59 (Iowa 1998) ("The 'weight of the evidence' refers to 'a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.'" (quoting *Tibbs v. Florida,* 457 U.S. 31, 37–38 (1982))). Because the district court judge stated "the weight of the evidence was sufficient to support the verdict of guilty," Nuno argues the court erred by considering whether the evidence presented was sufficient instead of weighing the credibility of the evidence as was required.

In *State v. O'Shea,* the district court denied a motion for a new trial. 634 N.W.2d 150, 154–55 (Iowa Ct. App. 2001). The appellant argued the district court applied the wrong standard because the district court stated that "the State of Iowa produced substantial, credible evidence." *Id.* Because the district court made a credibility finding in its ruling and did not use other indications of a sufficiency-of-the-evidence standard—such as viewing evidence in the light most favorable to the prosecution—our court determined the district court had applied the correct standard. *Id.* In contrast, in *State v. Nichter,* 720 N.W.2d 547, 559–

60 (Iowa 2006) and *State v. Scalise,* 660 N.W.2d 58, 66 (Iowa 2003), the Iowa Supreme Court found the trial courts applied the wrong standard in ruling on motions for new trial because the trial courts referred back to motions for judgment of acquittal and viewed the evidence in the light most favorable to the verdict. *See also State v. Root,* 801 N.W.2d 29, 31 (Iowa Ct. App. 2011) (finding the brief ruling ambiguous on whether the correct standard was applied and remanding for application of the weight-of-the-evidence standard).

Here, the district court used the word "sufficient" and did refer back to a motion for judgment of acquittal, stating the witnesses' "testimony in and of itself was sufficient to support a verdict of guilty, as the court denied the defendant's motion for acquittal at the conclusion of the trial also." *See Nichter,* 720 N.W.2d at 560 ("The court's reference to [the] motions for directed verdicts of acquittal during the trial where the court used the sufficiency-of-the-evidence standard indicates the court did not engage in any weighing of the evidence or consideration of credibility."). However, the district court stated the "jury found [the witness] to be credible" and made its own finding of credibility in stating the witness's testimony "in and of itself was sufficient to support a verdict of guilty." The district court also correctly stated the standard, that the "court has to find that the weight of the evidence supported the verdict the jury returned in this matter." We find the district court applied the correct standard in denying Nuno's motion for a new trial and did not abuse its discretion.

### C. Ineffective Assistance of Counsel

**Hearsay.** Nuno claims the testimony of Grandmother Schoening and Hollingsworth regarding the complaining witnesses' nonverbal conduct was

hearsay to which counsel should have objected. Schoening is the complaining witnesses' maternal grandmother and guardian; Hollingsworth is a teacher, H.R.'s uncle's fiancée, and a resident of the household. Following the testimony of the two child witnesses, Hollingsworth and Schoening testified that on the night of April 13, they were in the living room with H.R. and L.S. Hollingsworth testified on direct examination:

> A. When the conversation started [H.R.] was on her tablet and she was laying on the couch, and [L.S.] had been sitting on the couch but got very animated and stood up as the conversation progressed and she was telling us the story; she even acted out certain things that she said had happened. Would you like me to describe them?
> Q. Yes, please. A. She acted out how David Nuno touched her and H.R.'s butts, showing us the groping of their butts because we asked if it was just touching. And she acted out actual groping, not just a casual brush.
> As our conversation progressed, she also acted out—[L.S.] acted out H.R.'s shirt being pulled down and touching [H.R.]'s chest on her own body. [L.S.] did this to her own body to describe what had been happening to [H.R.]
> [L.S.] also acted out with [H.R.] [H.R.] being thrown to the ground and being laid on top of by David on top of [H.R.] and [L.S.] was acting as David laying on top of her.
> . . . .
> . . . A. Okay. Just getting up really close into her face, just pressing body to body.

On cross-examination, Hollingsworth testified the conversation started with the girls telling her and their grandmother that Nuno was "rude and mean," describing "physical abuse" and being hit with sticks, and then pointing out the bruises on H.R.'s body.

Schoening testified:

> They—at one time they were laying on the floor and they were doing humping motions . . . .
> . . . .
> They would—just rubbing motion with their hands and stuff, visual motions and stuff.

Schoening testified she asked the girls what they were doing and the girls replied, "This is the stuff." Nuno's trial counsel objected to this statement as hearsay. The objection was sustained. Schoening testified she asked the girls if they were making it up and they replied, "No." There was no objection to this question or answer.

Nuno contends Schoening's and Hollingsworth's descriptions of the complaining witnesses' actions when reciting their allegations are hearsay and that Nuno's trial counsel should have objected to its admission. *See State v. Mueller,* 334 N.W.2d 262, 264–65 (Iowa 1983) (holding nonverbal conduct can be hearsay); s*ee also* Iowa R. Evid. 5.801(a)(2) (including nonverbal conduct that is intended as an assertion within the definition of "statement" for hearsay purposes). The State argues the testimony falls within the excited utterance exception to the hearsay rule. *See State v. Galvan,* 297 N.W.2d 344, 346 (Iowa 1980). An excited utterance is defined as a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Iowa R. Evid. 5.803(2). We consider five factors in determining whether the excited utterance exception applies:

> (1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement.

*State v. Harper*, 770 N.W.2d 316, 319 (Iowa 2009) (quoting *State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999)).

Here, the complaining witnesses made the statements to Schoening and Hollingsworth the day after the alleged incident. *See Galvan,* 297 N.W.2d at 347 (holding the passage of two days as close enough to the transaction, especially for a child, to qualify as an exited utterance). However, Hollingsworth and Schoening did not characterize the girls as being excited or shocked but rather as being frustrated. The allegations arose during a conversation about friends of the girls' mother, while H.R. played with her tablet and L.S. talked about other events involving Nuno and others. While Schoening testified she did not "interrogate" the girls, she also stated she asked them for clarification and why they were making up the story. Hollingsworth also testified she asked L.S. for clarification of the touching. Our record is not sufficient to determine whether the descriptions of the non-verbal conduct qualify as excited utterances or whether trial counsel used a strategy with regard to the testimony in choosing not to object. *See State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012) ("[Defendant] will have to bring all his ineffective-assistance-of-counsel claims in a postconviction-relief action, because he raises multiple claims, some of which require further development of the record."). We preserve for future potential post-conviction relief.

**Vouching.** Nuno claims Schoening gave implicit vouching testimony during her direct testimony when she answered "No" to the prosecutor's question regarding whether either of the complaining witnesses had made sexual-assault allegations previous to the allegations concerning Nuno. Nuno claims that Schoening's statement implies the complaining witnesses' current allegations are more credible because they had not made similar accusations in the past.

Iowa case law regarding implicit vouching involves expert witness testimony, not testimony from lay witnesses. *See State v. Jaquez*, 856 N.W.2d 663, 666 (Iowa 2014) ("[W]hen an expert witness testifies a child's demeanor or symptoms are consistent with child abuse, the expert crosses that very thin line and indirectly vouches for the victim's credibility, thereby commenting on the defendant's guilt or innocence."); *State v. Brown*, 856 N.W.2d 685, 689 (Iowa 2014) ("[W]hen an expert comments, directly or indirectly, on a witness's credibility, the expert is giving his or her scientific certainty stamp of approval on the testimony even though an expert cannot accurately opine when a witness is telling the truth."); *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014) (holding expert testimony is not admissible to bolster witness credibility); *State v. Myers*, 382 N.W.2d 91, 97–98 (Iowa 1986).

Iowa cases have found that lay witnesses, like Schoening, can make observations about a complaining witness without vouching for the witness's credibility. *See State v. Barrett*, 445 N.W.2d 749, 752 (Iowa 1989) ("*Myers* involved expert opinion testimony on the credibility of a complaining witness who was a child and allegedly the victim of sexual abuse. The testimony here, by a layperson, did not so much address defendant's credibility as it stated an opinion about [the witness's] character and behavior."); *State v. Garcia-Miranda*, No. 05-1870, 2007 WL 1345848, at *7 (Iowa Ct. App. May 9, 2007) ("Officer Schwarz was not giving an expert opinion whether he believed Garcia—Miranda was telling the truth or lying. He simply described what he observed.") Schoening was not testifying to an observation, but something characterized as an historical fact. The question asked by the prosecutor was only relevant to the notion the

child witnesses were more credible because they previously had not made a similar allegation. We are not able to say on this record whether Nuno's trial counsel failed in his essential duty when he did not object to the question. *Clay,* 824 N.W.2d at 495. We preserve for future possible post-conviction proceedings.

**Victim Impact Statements.** Victim impact statements are governed by Iowa Code section 915.21. The authority to submit victim impact statements is wholly statutory and limited to specific persons. *State v. Matheson*, 684 N.W.2d 243, 244 (Iowa 2004). That group of persons only extends to immediate family members of the person suffering physical, emotional, or financial harm if the victim "died or was rendered incompetent as a result of the offense or who was under eighteen years of age at the time of the offense." Iowa Code § 915.10(3). Even if a party has no standing under section 915.10 to provide a victim impact statement, it does not require vacation of the sentence unless prejudice results. *See State v. Sumpter*, 438 N.W.2d 6, 9 (Iowa 1989).

Three victim impact statements were submitted to the court at sentencing, one each from Hollingsworth, Schoening, and L.S. Nuno argues neither L.S. nor Hollingsworth had standing to file a victim impact statement, as Hollingsworth is H.R.'s uncle's fiancée and Nuno was not convicted of either charge relating to L.S. Nuno maintains his trial counsel failed to perform an essential duty by not objecting to these victim impact statements. *See State v. Tesch,* 704 N.W.2d 440, 452–53 (Iowa 2005). However, to prevail on the prejudice prong of an ineffective assistance of counsel claim, Nuno must prove there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id.* at 453. And Nuno concedes his sentence was mandated by law. Thus, the result of the sentencing hearing would not have changed whether the victim impact statements were improperly included or not.

Next, Nuno contends because the victim impact statements are included in the presentence investigation report, they may impact Nuno's treatment program in prison and conditions on parole. Nuno argues he should receive a new sentencing hearing and the improper victim impact statements should be removed from the presentence investigation report.

The primary purpose of the presentence investigation report is to assist the district court in sentencing. *State v. Uthe,* 541 N.W.2d 532, 533 (Iowa 1995). However, in *Uthe,* the defendant asked the court to provide the department of corrections with an updated presentence investigation report after the defendant noted inaccuracies in the report. *Id.* at 532. Our supreme court held "any use of the presentence report by the department of corrections is secondary to its use by the court." *Id.* at 533.

We are unable to determine either the breach-of-duty or the prejudice component in Nuno's claim of ineffective assistance in allowing the victim impact statements. *See Clay,* 824 N.W.2d at 495. We preserve for possible postconviction-relief proceedings.

## IV. Conclusion.

Nuno was not denied the right to confront witnesses, and the district court did not apply the incorrect standard in denying Nuno's motion for new trial. We

preserve Nuno's claims of ineffective assistance of counsel for possible postconviction-relief proceedings.

Nuno's sentence and conviction are affirmed.

**AFFIRMED.**