STATE of Iowa, Appellee,

v.

Nicholas Andrew O'SHEA, Appellant.

No. 00–0908.

Court of Appeals of Iowa.

June 13, 2001.

Alfredo Parrish and Andrew Dunn of Parrish, Kruidenier, Moss, Dunn, Montgomery & Boles, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Michael Short, County Attorney, and

Bruce C. McDonald, Assistant County Attorney, for appellee.

Heard by HUITINK, P.J., and VOGEL and MAHAN, JJ.

VOGEL, Judge.

O'Shea was convicted of second degree murder in the death of his next door neighbor, Jan Boley. O'Shea appealed his conviction on several grounds, which were considered by this court in *State v. O'Shea*, No. 98–2170, 2000 WL 63189 (Iowa Ct. App. Jan.26, 2000) (*O'Shea I*). In reviewing the denial of O'Shea's motion for a new trial, grounded on a claim that the verdict was contrary to the evidence, we found the district court had applied the wrong legal standard, and remanded for application of the correct standard. The court once again denied O'Shea's new trial request, and also denied a newly-made motion for judgment of acquittal. It is from these denials that O'Shea appeals. Because we find no abuse of discretion, we affirm the district court's decision.

***Background Facts and Proceedings.***
In the approximately three years leading up to Boley's death, the relationship between O'Shea and Boley was characterized by high levels of animosity. Boley and her husband Mark would utter racist epithets at one of O'Shea's friends, and Boley would call O'Shea vulgar names when she encountered him in public. The conflict escalated when Boley and her family believed O'Shea was involved in an assault against one of their relatives and gave rise to threats of violence and "intimidation" trips to O'Shea's school. When O'Shea began dating Billie Jo Bouchard, a friend of Boley's son, the verbal abuse and taunts were extended to Bouchard, even at Bouchard's place·of employment. The facts surrounding the fatal confrontation between O'Shea and Boley were previously stated by this court:

On occasion, Bouchard was permitted to stay overnight in the O'Shea residence. She came there about 11:00 p.m. on the evening of March 24, 1998. The next morning, Bouchard left the O'Shea home to go to school. As she walked to her pickup, Mrs. Boley began screaming and moving toward her. Bouchard hurried to her vehicle and entered it.

O'Shea was awakened when he heard the front door slam. He then heard Mrs. Boley screaming outside. He jumped out of bed and ran to the window. He saw Mrs. Boley approach the driver's side door of Bouchard's truck and heard her cussing and threatening to "kick [Bouchard's] ass."

Bouchard testified Mrs. Boley pounded on the truck window, pulled the door open, and began striking Bouchard whose left arm was in a sling as a result of a recent collarbone fracture. Meanwhile, O'Shea, still inside the house, ran to the hutch and grabbed the phone. He then entered the kitchen and picked up a knife. O'Shea testified he began to dial the police department, but dropped the phone when he saw Mrs. Boley assaulting Bouchard. Though dressed only in socks and shorts, he ran outside.

There was ambiguity in the evidence with respect to the position of Bouchard and Mrs. Boley when O'Shea approached them. Two motorists testified they witnessed Mrs. Boley standing on her feet during the altercation. One of these witnesses recalled seeing Bouchard inside the truck during the assault. The other witness recalled seeing both Bouchard and Mrs. Boley grappling outside but near the truck. Bouchard recalled having her head slammed against an object, but did not know if the object was the street or another surface. O'Shea testified Bouchard was on her back on the street, and Mrs.

Boley was straddling her as he approached them with the knife in his left hand.

O'Shea claimed, as he approached, Mrs. Boley rolled off Bouchard and toward him. He testified, as he attempted to push her away from him, the knife entered Mrs. Boley's chest. She subsequently died. O'Shea claimed he had no intention to stab Mrs. Boley, but simply intended to get her off Bouchard.

Although O'Shea argued his actions were in defense of Bouchard and thus justified, the jury returned a guilty verdict. On his initial appeal he contended the district court applied the wrong legal standard in ruling on his motion for a new trial, challenged the sufficiency of the evidence to support his conviction, and claimed ineffective assistance of counsel. Upon review we found the district court had applied the wrong legal standard to O'Shea's new trial request. We reversed and remanded solely on this issue, as O'Shea's general judgment of acquittal motion failed to preserve error on his sufficiency of the evidence argument, and as the ineffective assistance of counsel claims were preserved for postconviction proceedings.

■ *Scope of Review.* Rulings on motions for new trial are reviewed for errors at law. Iowa R.App.P. 4. The district court has broad, but not unlimited discretion in ruling on new trial requests, and its decision will be reversed only for a demonstrated abuse of this discretion. *See* Iowa R.App.P. 14(f)(3); *State v. Belt,* 505 N.W.2d 182, 184 (Iowa 1993). A motion for a new trial, asserting the verdict was contrary to evidence under Iowa Rule of Criminal Procedure 23(2)(b)(6), should be granted only if, after considering both inculpatory and exculpatory evidence, the jury's verdict was contrary to the weight of the evidence. *State v. Ellis,* 578 N.W.2d 655, 658–59 (Iowa 1998). A verdict is contrary to the weight of the evidence where "a greater amount of credible evidence supports one side of an issue or cause than the other." *Id.* at 658 (quoting *Tibbs v. Florida,* 457 U.S. 31, 38, 102 S.Ct. 2211, 2216, 72 L.Ed.2d 652, 658 (1982)).

*I. New Trial Motion.* O'Shea alleges a number of grounds for finding abuse of discretion in the trial court's ruling. He contends the district court ignored the "findings of fact" made by this court in *O'Shea I,* once again applied the wrong standard in ruling on his new trial request, made findings and conclusions in regard to witness credibility that were not supported by the evidence, and failed to apply the law of justification. This last assertion is essentially an allegation that the State failed to meet its burden of proof in showing malice aforethought and lack of justification.

■ *A. Background facts in O'Shea I.* O'Shea contends that our two-page statement of background facts and proceedings in *O'Shea I* "weighs heavily" in favor of his justification defense, and he appears to suggest the district court should have found itself to be heavily influenced, if not bound, by our factual recitation. However, when reviewing a district court ruling for abuse of discretion, background facts are set down to frame the discussion and legal analysis, not to bind a district court upon remand. This contention is without merit.

■ *B. Application of the Ellis standard.* O'Shea's assertion that the district court failed to apply the correct new trial standard is also flawed. In denying the new trial motion the court found that "the State of Iowa produced substantial, credible evidence to support the jury verdict.... The greater amount of the credible evidence supports the State of Iowa."

O'Shea focuses on the district court's use of the word "substantial," and argues this demonstrates the court applied the standard of sufficiency of the evidence, rather than the greater weight of the evidence standard required by *State v. Ellis,* 578 N.W.2d 655 (Iowa 1998).

While "substantial evidence" is one element of the sufficiency of the evidence standard, other indices of that standard—such as viewing evidence in the light most favorable to the prosecution—are wholly lacking from the court's decision. Moreover, the district court made specific credibility findings—a thing not permitted under a sufficiency of the evidence assessment—and the bulk of its ruling is a near verbatim recitation of the *Ellis* criterion. *See id.* It is clear to this court that the correct standard was applied by the district court.

**C. Credibility assessment of Alger.** One of the State's key witnesses was Angela Alger, a registered nurse who worked in the critical care unit at an area hospital. Alger had just finished a twelve-hour shift and was running an errand when she drove by O'Shea's house, apparently on the same side of the street as Bouchard's truck. She testified that she saw Boley and Bouchard struggling, and then saw O'Shea run up to Boley, grab her by the hair, reach around her and strike her at least three times and with consistent force in the upper right area of her chest. Alger testified that she had a very good view of the confrontation and that she remembered it very clearly. She admitted she did not see a knife. This testimony was a prime focus of the new trial hearing.

O'Shea attacked Alger's testimony on the basis that, although she claimed to have seen at least three striking motions towards Boley's chest, the report of the medical examiner revealed only one stab wound. The State in turn assailed O'Shea's version that the stabbing occurred accidentally when he pushed Boley with a football-type blocking move, as such claim was contrary to the testimony of both the medical examiner and Alger. Thus, Alger's credibility was key to the district court's new trial ruling.

O'Shea focuses on the following recitation by the district court:

Ms. Alger was in an excellent place to observe the altercation and stabbing of Jan Boley. Due to her education and training, one could conclude that Ms. Alger also possessed greater than normal skills in making observations under stressful circumstances. Ms. Alger gave a very detailed accounting of the events and the stabbing motion of the defendant. Ms. Alger observed three thrusts of the knife by the defendant. Ms. Alger's observations of defendant's actions in grabbing and stabbing Jan Boley did not support, and in many aspects contradicted, the defendant's version of how the events leading up to the stabbing occurred as well as the stabbing.

O'Shea contends that this statement demonstrates the district court went outside of the record in two respects: one, there was no basis for assuming Alger's nursing skills imparted her with a greater ability to make observations under stressful conditions and two, since Alger never saw the knife, the court incorrectly found she had observed three knife thrusts.

■ We agree there is no clear support in the record for crediting Alger with enhanced observational abilities. However, the district court merely stated that "one could conclude" Alger's education and training as a nurse would assist in this regard. The court did not hinge its credibility assessment on the disputed language, and noted a number of other things that served to enhance the reliability and

credibility of Alger's testimony. What is apparent from the court's ruling is that it was impressed by Alger's overall credibility, and a witness's composure and demeanor—things critical to credibility assessments—are beyond our power to review.

In addition, the statement that Alger saw three knife thrusts, although not an accurate recitation of her actual testimony, is a correct summation of the facts as found by the district court. There is no dispute O'Shea had a knife and used it to stab Boley in the upper chest area, and there is no dispute that this is the only contact his hand or arm had with that area of her body. When this is combined with Alger's testimony that she saw him strike or hit Boley in the chest three times, a logical conclusion is that what Alger actually witnessed was three thrusts of O'Shea's knife.

■ Even assuming the district court's new trial ruling contained actual misstatements or inaccuracies, they are not fatal to its decision. Eliminating from Alger any enhanced observational ability and noting that she saw only three hits to Boley's chest area, her testimony is still imbued with indices of credibility and supportive of the State's theory of the case. Moreover, a review of the record indicates that, without regard to the personal credibility of O'Shea and Alger, the medical examiner's testimony directly contradicts O'Shea's account of the incident, but is consistent with Alger's testimony and the State's theory.

When the State demonstrated O'Shea's version of events during trial, the medical examiner testified that if Boley had been struck as O'Shea claimed, the wound's direction would have been totally different. In contrast, when presented with Alger's narrative the examiner testified the described actions were consistent with his findings. He also testified the thrust would have required some degree of force as the knife broke a rib, and that the two centimeter difference between the size of the surface wound and the widest part of the blade could be caused by the motions of struggle or by partial removal and reinsertion of the blade into the single knife wound.

■ While O'Shea correctly asserts other testimony was supportive of his position, the district court found that "very little" of that testimony was credible. We give great weight to a district court's credibility findings, and a review of the trial transcript provides no reason why that deference should not be granted in this case. *See State v. Weaver,* 608 N.W.2d 797, 804 (Iowa 2000). Even reducing the level of credibility assessed to Alger, and strictly reading the record for established facts, there was no abuse of discretion in concluding the greater weight of credible evidence demonstrated the stab wound was intentionally, rather that accidentally, inflicted.

■ *D. Justification defense.* O'Shea next argues that, even if the weight of the evidence demonstrates he intentionally stabbed Boley, the weight of the evidence did not support a finding of malice aforethought or the State's contention he acted without justification.[1] Malice is defined as "a fixed purpose or design to do

---

1. The jury was charged that the State was required to prove all of the following elements to establish the crime of murder in the second degree:

 1. On or about the 25th day of March, 1998, the Defendant stabbed Jan Marie Boley.

 2. Jan Marie Boley died as a result of being stabbed.

 3. The Defendant acted with malice aforethought.

 4. The Defendant was not acting with justification.

some physical harm to another which exists prior to the act committed." *State v. Artzer*, 609 N.W.2d 526, 529 (Iowa 2000) (quoting *State v. Sharpe*, 304 N.W.2d 220, 226 (Iowa 1981)). This purpose need not exist for any specific length of time. *State v. Walker*, 538 N.W.2d 316, 319 (Iowa Ct. App.1995). Malice can be implied from the use of a deadly weapon and an accompanying opportunity to deliberate, or from prior relations between the defendant and the victim. *Id.* A defendant's conduct both before and after the incident is also relevant to this inquiry. *See State v. Berry*, 549 N.W.2d 316, 318 (Iowa Ct.App.1996).

■ In this case, the greater weight of the evidence shows the defendant deliberately picked up a kitchen knife before leaving his home and then used that knife to intentionally and forcefully stab an unarmed victim in the chest. The knife is indisputably a deadly weapon, and the record reveals more than a sufficient opportunity for deliberation, thus giving rise to an inference of malice. O'Shea urges us to consider other information he maintains demonstrates an absence of malice. That he did not flee the scene, let police officers into his home, and did not try to hide or dispose of the knife lends some support to his position, but is insufficient to rebut the inference of malice. The other events O'Shea relies upon are neutral in their implications, subject to multiple inferences or more properly within the scope of the trial court's judgment.

For example, O'Shea contends his tumultuous history with Boley demonstrates he was never the aggressor, and accordingly would have no motive to make a calculated choice to stab Boley. However, a fact finder could also conclude the virulent and sustained harassment by Boley and her family reached a crescendo with the attack on Bouchard, leading O'Shea to a deliberate and intentional decision to end, or retaliate for, the abuse. Other specifics, such as O'Shea's assertion he tried to call the police prior to the incident, rely heavily or exclusively on his credibility. The record indicates the district court found O'Shea to be less than persuasive in this regard.

■ O'Shea further argues that any inference of malice is rebutted by the proof of justification in the record. As O'Shea properly raised the defense of justification, the burden was on the State to refute the defense by proving, beyond a reasonable doubt, any one of the following elements: that O'Shea knew Bouchard had instigated or continued the confrontation with Boley, that O'Shea had an alternate course of action available, that he did not believe Bouchard was in imminent danger of injury and the use of force was unnecessary, that if he did have such a belief it had no reasonable basis, or that the force used was unreasonable. *See State v. Coffman*, 562 N.W.2d 766, 768 (Iowa Ct.App. 1997). The jury was instructed accordingly.[2]

2. The State's burden was set forth as follows:

A person is justified in using reasonable force if he reasonably believes the force is necessary to defend another from any imminent use of unlawful force.

If the State has proved any one of the following elements, then the Defendant was not justified:

1. The Defendant knew the person he helped had started or continued the incident, or the Defendant himself started or continued the incident which resulted in death.
2. An alternative course of action was available to the Defendant.
3. The Defendant did not believe the person he helped was in imminent danger of death or injury and the use of force was not necessary to save the person.
4. The Defendant did not have reasonable grounds for the belief.

O'Shea focuses much of his argument on the fact that it was reasonable to believe Bouchard was in danger and that it was necessary to use force to protect her from any further physical harm. The State effectively concedes this point. The key to the justification issue is whether his goal of stopping Boley in her attack on Bouchard could have been met without stabbing Boley in the chest.

O'Shea's actions meet the definition of deadly force. *See* Iowa Code § 704.2(2) (1999) (classifying deadly force as that level of force a defendant knew or reasonably should have known would create a strong probability of serious injury). Deadly force is reasonable force only where

> it is reasonable to believe that such force is necessary to avoid injury or risk to ... the life or safety of another, or ... to resist a like force or threat. Reasonable force, including deadly force, may be used even if an alternative course of action is available if the alternative entails a risk to ... the life or safety of a third party....

Iowa Code § 704.1 (1999).

 Boley was not armed with a weapon and no person, including O'Shea, testified it even appeared that she held one. None of the disinterested witnesses described the confrontation between Boley and Bouchard as being of a life-threatening nature. The evidence indicates Boley was holding down or holding onto Bouchard, had struck Bouchard's head against some object, and was hitting Bouchard with her hands. While it was necessary for O'Shea to physically confront Boley to end her attack on Bouchard, it was neither necessary nor reasonable to stab her in the chest with such force that the knife broke a rib and came close to exiting from Boley's back. Given the record, it was not an

abuse of discretion to find the weight of the evidence demonstrated the attack on Boley was without justification.

 **II. Motion for Judgment of Acquittal.** After remand O'Shea filed a new motion for judgment of acquittal, attempting to cure the flaws of the general motion made during his trial. The new motion set forth the specific elements alleged to be insufficiently supported by the record. The district court struck the filing, stating it was beyond the authority of the limited remand. O'Shea, citing Iowa Rule of Criminal Procedure 18(8)(b), contends this motion was perfectly permissible, as the rule places no time limit on filing a motion for judgment of acquittal and allows the district court to reach a decision on such a motion even after a jury verdict is returned.

 When a case is remanded for a limited purpose, the district court's authority extends only to that which is mandated by the appellate court. *In re Marriage of Davis*, 608 N.W.2d 766, 769 (Iowa 2000). Any action contrary to or beyond the scope of the mandate is null and void. *Id.* Here, the remand to the district court was for the sole and limited purpose of applying the correct legal standard to O'Shea's new trial motion and did not extend to a reconsideration of the motion for judgment of acquittal. Moreover, a court is authorized to enter a post-verdict judgment of acquittal only if it reserves ruling on the same. *See State v. Marti*, 290 N.W.2d 570, 582 (Iowa 1980). Here, no such reservation was made. The district court was wholly without authority to consider O'Shea's new and/or renewed motion for judgment of acquittal, and it was properly struck.

 **III. Ineffective Assistance of Counsel.** The motion for judgment of ac-

---

5. The force used by the Defendant was unreasonable.

quittal also advanced an ineffective assistance of counsel claim based on counsel's failure to make a sufficiently specific motion at trial. O'Shea now forwards this claim as an independent ground of appeal. As previously stated, the remand to the district court was limited to application of the *Ellis* standard, and the new ineffective assistance of counsel claim had no place in the district court proceedings. Moreover, even if we were to take up O'Shea's implicit suggestion to equate his second appeal to a postconviction proceeding, the newly made ineffective assistance claim was waived when not raised in O'Shea's first appeal.

 Failure to raise a claim may not be fatal if a defendant can demonstrate sufficient reason for the failure. *See Berryhill v. State*, 603 N.W.2d 243, 245 (Iowa 1999). The number of reasons is limited when the claim is based on ineffective assistance of trial counsel, *id.*, but one cause that may be sufficient is ineffective assistance of appellate counsel. *See Collins v. State*, 477 N.W.2d 374, 376 (Iowa 1991). Notably, O'Shea neither claims ineffective assistance of appellate counsel nor attempts to forward any other basis for negating the waiver, unless we view the lack of error preservation at trial to be adequate reason in and of itself. Sufficient cause does not exist, however, merely because counsel failed to preserve error at trial. The State points to our prior decision of *Bailey v. State*, 493 N.W.2d 419 (Iowa Ct.App.1992), as being potentially contrary to this conclusion.

David Bailey was convicted of burglary in the second degree and theft in the second degree. On direct appeal this court affirmed Bailey's conviction, finding trial counsel had failed to preserve error on his claim that a private office in a public area was not an "occupied structure" as defined by Iowa Code section 713.1 (1987). Bailey then filed an application for postconviction relief, arguing that this failure to preserve error amounted to ineffective assistance of his trial counsel. The district court denied the application, and we affirmed its decision. While concluding the trial attorney's failure to preserve error was not tantamount to ineffective assistance of counsel, we noted:

> Although this issue was . . . not raised on direct appeal, we find "sufficient reason" for not having done so exists because it was the direct appeal itself in which error on this issue was found to not be properly preserved, thus suggesting trial counsel had failed to provide effective assistance of counsel by not properly preserving error.

*Id.* at 421–22.

The effectiveness of Bailey's trial counsel could have been preserved in his direct appeal by presenting the error to the appellate court as a basis for an ineffective assistance of counsel claim. Since Bailey failed to raise the issue in his direct appeal, on postconviction relief he was required to demonstrate sufficient reason for this failure. *Berryhill*, 603 N.W.2d at 245. Bailey did not assert any reason for failing to preserve error, including the often-cited ineffective assistance of appellate counsel. Nonetheless, the *Bailey* court was willing to infer sufficient cause from the procedural facts of the case. To the extent *Bailey* found sufficient reason to be established by no more than a trial counsel's failure to preserve error, it is overruled.

***Conclusion.*** This case was remanded for the limited purpose of applying the correct legal standard to O'Shea's new trial motion. Accordingly, the district court properly struck, as beyond the scope of that remand, O'Shea's newly-made motion for judgment of acquittal and the incorporated ineffective assistance of trial counsel

argument. Our review is therefore limited to the new trial motion, as no other issues are properly before us on appeal. In that regard the record reveals the correct standard was applied by the district court, and that under such a standard the district court could find the greater weight of credible evidence supported the State's contention that O'Shea stabbed Boley with malice aforethought and without justification. No abuse of discretion having been shown, we affirm the ruling of the district court.

**AFFIRMED.**