# IN THE COURT OF APPEALS OF IOWA

No. 18-0025
Filed September 12, 2018

**IN THE INTEREST OF K.C.,**
**Minor Child,**

**K.C., Minor Child,**
    Appellant.

_____

    Appeal from the Iowa District Court for Scott County, Mark R. Fowler and Cheryl E. Traum, District Associate Judges.

    K.C. appeals from the district court's adjudication of him as delinquent for lascivious acts with a child. **AFFIRMED**.

    Lauren M. Phelps, Davenport, for appellant.

    Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

    Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, Judge.**

K.C. appeals his adjudication as a delinquent for lascivious acts with a child under Iowa Code section 709.8 (2016). He argues that the district court's determination was not supported by sufficient evidence because the alleged victim, A.A., was not a credible witness and K.C. lacked the requisite specific intent. We find the district court had sufficient evidence for the adjudication because the record support's A.A.'s credibility and K.C. had the specific intent to commit the act.

**I.    Background Facts and Proceedings**

On August 9, 2016, K.C. assisted his brother with babysitting A.A.—then age four and one-half—and her brother. A.A.'s mother left the residence around nine o'clock at night and returned around midnight. Upon arriving home, A.A.'s mother found K.C. and A.A. asleep in the same bed and both were fully clothed. A.A.'s mother woke A.A. and took her to the bathroom before returning her to the bed.

The following morning, A.A.'s mother left for work around seven, and then A.A.'s father arrived at the residence to pick up A.A. and her brother. At the time, A.A.'s father did not ask K.C. why he was in the bed with A.A.; however, he questioned A.A.'s mother about the situation later. A.A.'s mother spoke with A.A., who indicated that K.C. had touched her on her "coochie" and her "butt." A.A.'s mother testified that A.A. was very upset and cried while discussing the incident. A.A.'s mother and father accompanied her to the hospital for an examination.

On August 11, 2016, at the examination, A.A. met with a Sexual Assault Nurse Examiner (SANE). A.A. told the SANE nurse that K.C. touched both her

vaginal area and her buttock with the purpose of determining if A.A. had urinated in the bed, and that K.C. continued to touch her even after she became upset and started to cry. Although doubtful that a "touch DNA" would produce a result, the SANE nurse prepared a sexual assault evidence kit for law enforcement to collect the next day.

Law enforcement interviewed K.C. on August 30, 2016. K.C. told law enforcement that the covers smelled of urine and he decided to check if A.A. had urinated in the bed. He initially stated he touched A.A.'s thighs on the outside of her clothes. Later in the interview, K.C. admitted to reaching inside A.A.'s clothes to touch her in order to see if urination occurred. He also stated that he opened the back of her pants and accidentally touched her buttock. Additionally, K.C. told law enforcement he has had sexual thoughts about an ex-girlfriend but denied having had any sexual thoughts regarding A.A. specifically.

On September 21, 2016, a petition was filed alleging K.C. committed a delinquent act, lascivious acts with a child. At a hearing, held on December 7, 2017, K.C. was found to be a delinquent child and was adjudicated on the charge of lascivious acts with a child. The court ordered K.C. to be placed at the Iowa State Training School in Eldora.

K.C. now appeals his adjudication. He claims the district court erred in adjudicating him, asserting A.A. was not a credible witness and he lacked the specific intent required as an element of the delinquent act.[1]

---

[1] K.C. asserts that we should find he lacked the ability to form the requisite specific intent, based on a pre-hearing physiological evaluation. However, the order finding K.C. competent to proceed with the adjudicatory hearing was not appealed and the evaluation was not made part of the adjudicatory record.

## II.    Standard of Review

"We review delinquency proceedings de novo." *In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013) (citing *In re J.A.L.*, 694 N.W.2d 748, 751 (Iowa 2005)). "Although we give weight to the factual findings of the juvenile court, especially regarding the credibility of witnesses, we are not bound by them." *A.K.*, 649 N.W.2d at 49 (citing *In re J.D.F.*, 553 N.W.2d 585, 587 (Iowa 1996)). "We presume the child is innocent of the charges, and the State has the burden of proving beyond a reasonable doubt that the juvenile committed the delinquent acts." Iowa Code § 232.47(10) (2011); *A.K.*, 649 N.W.2d at 49. Furthermore, "[w]e review the sufficiency of the evidence for juvenile adjudications de novo." *In re D.S.*, 856 N.W.2d 348, 351 (Iowa 2014); *see A.K.*, 649 N.W.2d at 49.

## III.    Sufficiency of the Evidence

K.C. contends the district court lacked sufficient evidence to adjudicate him delinquent having committed a lascivious act.[2] Specifically, he argues that A.A. was not a credible witness and that he lacked the requisite specific intent to commit the act.

### A. Credibility

First, K.C. asserts A.A. was not a credible witness. The reasons presented include A.A. could not remember K.C.'s nickname and she was unable to say the appropriate terminology for her body part that was touched upon initial questioning

---

[2]    It is unlawful for any person sixteen years of age or older to perform any of the following acts with a child with or without the child's consent unless married to each other, for the purpose of arousing or satisfying the sexual desires of either of them:
a. Fondle or touch the pubes or genitals of a child.

Iowa Code § 709.8(1)(a).

at trial. However, the record shows A.A. used a variety of terms across numerous occasions to indicate K.C. touched her genitals. A.A. informed both her mother and the SANE nurse that K.C. touched her vaginal area as well as her buttock. In addition, A.A.'s mother testified that during the conversation with her daughter, A.A. was very upset upon disclosing the touching.

After considering the information, A.A.'s parents took her to the hospital where she met with a SANE nurse. During this meeting, A.A. told the SANE nurse that K.C. touched both her vaginal area and her buttock for the stated purpose of determining if A.A. had urinated in the bed. At the hearing, A.A. testified about the incident. During direct examination, A.A. could not recall K.C.'s nickname, but she was able to recognize it when told and was able to identify K.C. in the courtroom as the person who had touched her. A.A. also had trouble initially recalling the word for her body part that was touched, but she was able to indicate the area touched on a drawing of a female child.

Because the district court had a "superior vantage point to make credibility determinations due to its ability to consider firsthand the demeanor and appearance of the parties," we give deference to the district court's findings. *Neimann v. Butterfield*, 551 N.W.2d 652, 654 (Iowa 1996); *see also State v. O'Shea*, 634 N.W.2d 150, 156 (Iowa Ct. App. 2001) ("[A] witness's composure and demeanor—things critical to credibility assessments—are beyond our power to review."). The district court found

> the testimony of [A.A.] to be extremely influential. She testified that [K.C.] put his hands inside her pants and touched her vagina. She even testified that she told him to stop. She testified that she told him to stop because it hurt. In addition, during the questioning by the

police [K.C.] admitted that he placed his hand inside [A.A.'s] underwear.

Although we are not bound by the credibility assessment of the district court, we, like the district court, conclude that the record supports A.A.'s credibility.

### B. Specific Intent

K.C.'s second assertion is that that he did not have the requisite specific intent "to arouse or satisfy the sexual desires" of the accused. The district court stated:

> The idea that the juvenile was just checking to see if [A.A.] was wet does not make sense. If that were the case, he would not need to put his hands inside the child's pants. The court finds that the only reason for him to place his hands inside her pants was for his own arousal.

K.C. asserts the district court erred in finding that his purpose for putting his hands inside A.A.'s pants was for sexual arousal. K.C. asserts this determination was in error because he lacked sexual education and his purpose of checking for urination justifies his actions.

Cases involving lascivious acts typically hold that "intent may be inferred from the nature of the act itself and that proof of separate and distinct acts of a similar nature is unnecessary." *State v. Kinkade*, 43 N.W.2d 736, 738 (Iowa 1950). Moreover, "a specific purpose in mind or intent to commit sexual abuse may be similarly inferred from the facts and circumstances surrounding [the] actions." *State v. Most*, 578 N.W.2d 250, 254 (Iowa Ct. App. 1998). "Evidence sufficient to prove necessary specific intent includes sexual comment, touching in a sexual manner, attempt to remove clothing, or an act in any other way which would indicate a plan to engage in sexual activity." *Id.*

The detective who interviewed K.C. testified that K.C. initially stated the covers on the bed smelled of urine and, for this reason, he touched A.A.'s thighs to determine if she had urinated herself. The detective then informed K.C. that A.A. claimed K.C. touched her vaginal area and buttock underneath her clothing. K.C. admitted he did in fact check under the clothes in the vaginal area to determine if urination had occurred. When the detective asked about A.A.'s claim that K.C. also touched her buttock, he stated that he opened the back of her pants and accidentally touched her buttock. In addition, K.C. informed the detective he has had sexual thoughts involving an ex-girlfriend, but he denied having similar thoughts about A.A. specifically.

On our de novo review, we find sufficient evidence to support the adjudication. The evidence presented showed K.C. touched A.A. in a sexual manner when he put his hands inside her clothes and touched her vaginal area as well as her buttock. If K.C. had only touched A.A. for the purpose of checking if she had urinated herself, he would have been able to do so by touching the outer clothing or even touching the covers that he claimed to smell of urine. Moreover, while K.C. did not remove any clothing, he admittedly placed his hand inside A.A.'s clothes and opened the back of her pants. This evidence is sufficient to prove K.C. had specific intent to commit the delinquent act of lascivious acts with a child. *See id.*

## IV. Conclusion

We conclude the district court's adjudication of K.C. for the delinquent act of lascivious acts with a child is supported with sufficient evidence.

**AFFIRMED.**