# IN THE COURT OF APPEALS OF IOWA

No. 19-0669
Filed February 3, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**HELEN JEANNETTE FRAZIER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, William P. Kelly, Judge.


        Helen Frazier appeals her conviction of murder in the second degree.
**AFFIRMED.**



        Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney
General, for appellee.



        Considered by Vaitheswaran, P.J., Greer, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2021).

**VAITHESWARAN, Presiding Judge.**

Helen Frazier stabbed a man to death.  The district court found her guilty of second-degree murder.[1]  On appeal, Frazier contends (1) the record lacks sufficient evidence to support her conviction and (2) her trial attorney was ineffective in "fail[ing] to investigate and set forth an insanity defense and evidence of battered woman's syndrome."

## I.      *Sufficiency of the Evidence—Second Degree Murder*

The district court summarized the elements of proof as follows: "To convict Helen Frazier of [s]econd-[d]egree [m]urder, the State must prove beyond a reasonable doubt that [Frazier] (1) killed another person and (2) the killing was done with malice aforethought."  *See* Iowa Code §§ 707.1 (2017) ("A person who kills another person with malice aforethought either express or implied commits murder."), .3(1) ("A person commits murder in the second degree when the person commits murder which is not murder in the first degree.").  Frazier stipulated she "inflicted the stab wound that resulted in [the man's] death."  She challenges the sufficiency of the evidence supporting the district court's finding of malice aforethought.  In her view, the man's "death was accidental, and [she] was justified in protecting herself from him."

"Malice aforethought is a fixed purpose or design to do some physical harm to another that exists before the act is committed."  *State v. Buenaventura*, 660 N.W.2d 38, 49 (Iowa 2003) (citation omitted).  Malice aforethought may be inferred from the use of a dangerous weapon.  *See State v. Green*, 896 N.W.2d 770, 780

---

[1] The court also found Frazier guilty of two counts of malicious prosecution.  Those convictions are not at issue on appeal.

(Iowa 2017). A knife with a blade longer than five inches is a dangerous weapon. *See* Iowa Code § 702.7 (defining "dangerous weapon" as "any instrument or device designed primarily for use in inflicting death or injury upon a human being or animal, and which is capable of inflicting death upon a human being when used in the manner for which it was designed" and stating "[d]angerous weapons include but are not limited to" a "knife having a blade exceeding five inches in length"). The inference may be rebutted by proof of justification. *See State v. O'Shea*, 634 N.W.2d 150, 158 (Iowa Ct. App. 2001). "Justification is a statutory defense permitting a person to use reasonable force, including deadly [force], if that person reasonably believes the force used was necessary to defend himself or [herself] or another from any imminent use of unlawful force." *State v. Fordyce*, 940 N.W.2d 419, 425 (Iowa 2020). Our review of the district court's findings is for substantial evidence. *Id.*

Frazier testified at trial. The district court determined she "was not a credible witness." That credibility finding was uniquely within the court's purview, and we accord it deference. *See State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017). The finding is supported by Frazier's evolving and inconsistent stories of what occurred. *See State v. Blair*, 347 N.W.2d 416, 422 (Iowa 1984) (stating the "defendants made several inconsistent statements to police officers").

Frazier lived with a man in a home he rented. After the man was stabbed and became unresponsive, Frazier called her mother, spoke to her for eleven minutes, and then called 911. At trial, Frazier admitted to telling the 911 dispatcher that someone else committed the crime on purpose because of debt owed by the

man.  She also admitted that she made no mention of self-defense.  And she did not recall saying the stabbing was an accident.

When Des Moines police arrived at the scene following the 911 call, Frazier again implicated the person she had identified in the call.  During the first of several recorded interviews with police, she reconfirmed his identity.

Approximately two weeks later, Frazier described events differently.  Detectives pointed out the inconsistencies in her first and second renditions of events, asked her to "reset," told her to be honest, and said "the truth will set you free."  Frazier mentioned the name of another person but did not elaborate.  One of the detectives stated "this is your time for redemption"; "this is a safe place to tell this story"; "this right here is a safe place to tell this story"; and "you're going to be fine, I will tell you that."  Frazier implicated the person she had just named.  Police determined there were two people with that name.  They eliminated both as suspects.

In a third recorded interview, Frazier implicated an entirely new person.  One of the detectives expressed incredulity.  After questioning her about her role, he asked, "[D]id you need to defend yourself against him?"  Frazier responded, "No," directly contravening her trial testimony concerning the need to defend herself.

In a fourth interview, Frazier was afforded the opportunity to make changes to her stories.  She declined.  A detective informed her that the person she identified during the third interview did not exist.  When asked what was going on the day of the stabbing, she responded she had "blocked it out."

Frazier's mental block dissipated by the time of trial.  She testified the man who was stabbed came into the kitchen, she believed from "[t]he way he was walking" that "it wasn't going to be nice," she "turned and . . . picked up the knife" she had been using to cut vegetables, she pointed the knife at him as he approached her, she "told him to just stop, but he wouldn't stop," she "held [her] hand up and . . . had the knife on him," and momentarily, he swore and "hit the floor."

On cross-examination, Frazier admitted the police repeatedly asked Frazier whether she acted in self-defense and each time she said no.  When the prosecutor asked her if she "gave at least four false stories to the police" she responded, "Yes, sir."  In short, the district court's adverse credibility finding is supported by Frazier's statements and admissions, which are subject to appellate review, in addition to her trial demeanor, to which we are not privy.  *See* Nicole Rowner Boyer, *The Credibility Distinction in Kroger Co. v. Morris*, 27 U. Rich. L. Rev. 935, 935 (Summer 1993) (distinguishing between "demeanor credibility" and "substance credibility" and noting "'substance credibility' can be determined from the written record alone").

The district court also found the man was stabbed with "[a] 5.5-inch knife." Frazier does not dispute that the blade length satisfied the definition of a dangerous weapon.  If there were any doubt, Frazier identified the knife she used, admitting she purchased it "a couple of days prior" to the stabbing; and the medical examiner stated the depth of the wound was approximately "[s]ix inches," opined the knife found in the kitchen sink was consistent with the type of knife that could have inflicted the injuries, and stated, "Once you penetrate into the skin, the knife

would probably go in relatively easily through the rest of the tissues, all the way up to the end of the knife, the hilt of the knife." Use of a 5.5-inch knife triggered an inference of malice aforethought.

The district court proceeded to Frazier's justification defense. Again, the court found Frazier's inconsistent stories at odds with her claim of self-defense, noting she "repeatedly and emphatically denied that she had stabbed" the man "and expressly denied that she had stabbed him in self-defense." The court determined her "trial testimony—the only foundation for her claim of self-defense— was proven to be inaccurate." As discussed, the police interviews support that characterization.

The court also found, "[T]he clearest, simplest and most basic evidence disproving justification is [Frazier's] in-court admission during cross-examination that she could 'probably' have just pushed [the man] away, as she claimed to have done before." That finding also is supported by the record. Frazier acknowledged the man she stabbed never used any physical force against her on the day of the stabbing. Although she repeatedly asserted he was "coming up on" her, she agreed she "[p]robably could have" pushed him with just her hands, but she "didn't think of it like that at the time."

In sum, the district court's adverse credibility finding—supported by Frazier's conflicting and often irreconcilable statements—together with her use of a dangerous weapon and the admissions undermining her justification defense amount to substantial evidence in support of the district court's determination that Frasier acted with malice aforethought. *See State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006) ("Under the sufficiency-of-the-evidence test, th[e] evidence could

convince a rational trier of fact beyond a reasonable doubt that [the defendant] acted with malice and without justification when she shot [a man]."). The court did not err in finding Frazier guilty of second-degree murder.

## II.   Ineffective Assistance of Counsel

Frazier claims her trial attorney was ineffective in "fail[ing] to investigate and set forth an insanity defense and evidence of battered woman's syndrome."[2]  The State responds that the record is inadequate to decide Frazier's claim on direct appeal.  We agree with the State.  *See id.* at 143 (preserving claim regarding failure to adequately investigate battered woman syndrome for postconviction relief).

**AFFIRMED.**

---

[2] Frazier filed her notice of appeal on April 16, 2019.  Accordingly, recent legislation precluding the consideration of ineffective-assistance-of-counsel claims on direct appeal, which became effective on July 1, 2019, does not preclude consideration of the claim.  *See State v. Macke*, 933 N.W.2d 226, 228 (Iowa 2019).