# IN THE COURT OF APPEALS OF IOWA

No. 21-1511
Filed October 19, 2022

**SUSAN A. GUGE and PEGGY McDONALD,**
    Plaintiffs-Appellees,

**vs.**

**KASSEL ENTERPRISES, INC., CRAIG L. KASSEL and DEBRORAH M. KASSEL,**
    Defendants-Appellants,

**and**

**KASSEL FARMS, INC. and GREAT OAKS FARMS, INC.,**
    Defendants.
_____

Appeal from the Iowa District Court for Palo Alto County, Charles Borth, Judge.

Defendants appeal district court rulings following a remand in corporate-dissolution litigation. **AFFIRMED.**

Thomas D. Hanson of Dickinson, Mackaman, Tyler & Hagen P.C., Des Moines, for appellants.

Mark C. Feldmann, Justin E. LaVan, and Benjamin J. Kenkel of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellees.

Heard by Vaitheswaran, P.J., Ahlers, J., and Mullins, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**MULLINS, Senior Judge.**

Following district court proceedings in this corporate-dissolution litigation, the supreme court partially reversed and remanded to the district court to determine and apply a discount rate for transaction costs as part of the fair-value determination of corporate shares. The defendants—Kassell Enterprises, Inc. and Craig and Deborah Kassel—appeal two district court rulings following that remand, the first being the court's determination and application of the discount rate, and the second being the court's award of appellate attorney fees to the plaintiffs— Susan Guge and Peggy McDonald. As to the first ruling, the defendants argue they were deprived of their right to appear, present evidence, and be heard following remand, and the court erred in its credibility assessments as to the expert witnesses. As to the second, they argue the court was without jurisdiction to award appellate attorney fees and the court abused its discretion in entering the award.

## I.  Background Facts and Proceedings

The supreme court recently summarized the background facts and litigation between these parties as follows:

> Lawrence and Georgia Kassel owned a family farming operation that they incorporated in 1977 under the name Kassel Enterprises, Inc. They had three children: Susan Guge, Peggy McDonald, and Craig Kassel. Lawrence passed away in 2005; Georgia in 2017. Through a series of gifts of stock during their lives, bequests in their wills after their deaths, and Craig's purchase of additional shares from his mother after his father's death, Lawrence and Georgia ultimately transferred all of the corporation's stock to their children. At the time this lawsuit arose, Susan and Peggy each owned 23.75% of the corporation's shares and Craig the remaining 52.5%.
> After Georgia's death, Susan and Peggy filed a lawsuit against Craig, Craig's wife, two of Craig's separately-owned corporations, and Kassel Enterprises. Count I of the lawsuit sought judicial dissolution of Kassel Enterprises under Iowa Code

section 490.1430(1)(b)(2) (2018) (for "illegal, oppressive, or fraudulent" conduct) and section 490.1430(1)(b)(4) (for waste or misapplication of corporate assets). Five additional claims, counts II through VI, sought money damages based on claims for breach of fiduciary duty, fraud, breach of contract, third-party beneficiary rights, and civil conspiracy. The defendants denied the claims and added three counterclaims against Susan and Peggy.

Kassel Enterprises invoked Iowa Code section 490.1434, electing to purchase Susan and Peggy's shares for fair value in lieu of a judicial dissolution of the corporation. Because the parties failed to reach their own agreement on the fair value of the shares within sixty days, the district court set the matter for a hearing to determine the fair value of Susan and Peggy's shares for the buyout. *See* Iowa Code § 490.1434(4) (requiring the district court, upon application of any party, to determine the fair value of the petitioner's shares if the parties are unable to reach an agreement within sixty days).

In the interim, the parties filed motions for summary judgment on the other claims in the case. Before the summary judgment hearing, Susan and Peggy voluntarily dismissed all of their claims against the defendants in counts II through VI except for part of their breach of fiduciary duty claim in count II against Craig and his wife. Craig and his wife likewise dismissed one of their counterclaims.

The district court used an asset-based method to calculate the fair value of the shares. It started with the parties' agreed valuation of the corporation's total assets ($5,804,403), then subtracted the corporation's total liabilities ($22,046), to arrive at a total shareholder equity of $5,782,357. Dividing the total shareholder equity amount by the number of outstanding shares (847), the district court determined that the fair value of each share was $6826.87. Susan and Peggy each owned 201.165 shares, so their respective shareholdings totaled $1,373,327. The district court didn't apply any discounts urged by Craig for transaction costs or tax liabilities for built-in gains associated with a hypothetical sale of corporate assets, and it didn't apply any additions as urged by Susan and Peggy based on Craig's alleged waste and misapplication of corporate assets. The district court granted Susan and Peggy's request for an award of reasonable fees and expenses of their attorneys and expert witnesses under Iowa Code section 490.1434(5) of $93,620.74 and $6540, respectively. The district court directed the purchase of Susan and Peggy's stock through an installment plan payable over five years and secured by personal guarantees from Craig and his wife and the shares of stock. *See* Iowa Code § 490.1434(5) (authorizing the court to order payment in installments and to provide security to assure payment).

In its ruling on the motions for summary judgment, the district court ruled in Craig's favor on count II, finding that the claims of wrongdoing by Craig and his wife required a finding of injury to

Kassel Enterprises as a corporate entity, not injury to Susan and Peggy as individual shareholders, and thus were "derivative" claims. Determining that the substantive and procedural requirements for bringing derivative claims had not been met, the district court dismissed count II. The district court ruled in Susan and Peggy's favor on Craig's counterclaims for equitable setoff and unjust enrichment.

No party appeals any summary judgment ruling, but both sides appeal the district court's determination of fair value. Craig argues the district court erred in determining the fair value of Susan and Peggy's shares without any discount for transaction costs or built-in gain taxes, and in awarding their attorney fees and expert expenses against the corporation. In a cross-appeal, Susan and Peggy argue that the district court erred in failing to increase the fair value of their shares based on Craig's alleged waste and misapplication of Kassel Enterprises' assets.

*Guge v. Kassel Enter., Inc.*, 962 N.W.2d 764, 768–70 (Iowa 2021).

On appeal, the supreme court found the district court should have "reduce[d] the asset values to account for the costs to liquidate Kassel Enterprises' assets" and reversed on this issue. *Id.* at 772. The court noted "both parties' experts agreed that a deduction for transaction costs based on a hypothetical liquidation of Kassel Enterprises' assets should have been included; they simply disagreed on the amount." *Id.* at 771. Specifically, Craig's expert reached a discount rate of 8%, while Susan and Peggy's expert reached a lower rate of 3%, with "[t]he difference largely reflect[ing] a disagreement about a hypothetical commission rate for the sale of the farmland." *Id.* Because the supreme court found "the record lacking in sufficient detail . . . to make this important determination," it remanded "for the district court to determine and apply the

appropriate deduction of transaction costs to the value of the corporation's assets in setting the fair value of Susan and Peggy's shares." *Id.* at 772.[1]

On September 17, shortly after the issuance of procedendo, the district court entered an order, in which it rejected the defendants' previously raised claim that they "are entitled to the opportunity to be heard and present evidence and argument on remand," concluding the supreme court was simply without the district court's credibility determinations as to the expert opinions. Based on the evidence previously presented, the district court found Susan and Peggy's expert's discount rate of 3% to be more credible and reduced the fair value of Susan and Peggy's shares accordingly.

Then, on October 11, Susan and Peggy filed an application for appellate attorney fees in the amount of $57,161.00, asserting their defense of the prior appeal was reasonably necessary and they were the successful parties on appeal. Craig resisted, characterizing the application as an untimely motion under Iowa Rule of Civil Procedure 1.904(2) and arguing there was no basis for the district court to award appellate attorney fees on remand. In response, Susan and Peggy argued the court had authority to award appellate attorney fees.

On October 18, Craig appealed the court's September 17 ruling. In a supplemental resistance to plaintiffs' request for an award of appellate attorney

---

[1] The supreme court affirmed on all remaining issues. Specifically, the court "decline[d] to adjust for the built-in tax consequences . . . in determining the fair value of Susan and Peggy's shares." *Guge*, 964 N.W.2d at 773. The court also rejected Susan and Peggy's claims relating to waste and misapplication of corporate assets. *See id.* at 775. As to taxing of attorney fees and expert costs against the corporation, the supreme court found no abuse of discretion. *Id.* at 777.

fees, Craig pointed out a request for appellate attorney fees was raised by Susan and Peggy on appeal, the supreme court did not address the request, and the supreme court did not remand on that issue.

Following a hearing in December, the court entered its ruling on appellate attorney fees. Considering the fees already awarded, the issues raised on appeal, the relative success of the parties on appeal, and the lack of detail in the fee itemization, the court awarded Susan and Peggy attorney fees in the amount of $14,290.25. Craig likewise appealed that ruling. The supreme court granted Craig's motion to consolidate the appeals and transferred the matter to this court for resolution.

## II. Standard of Review

We normally review equity cases such as this one de novo. *Id.* at 770. However, we review the district court's compliance with a remand mandate from an appellate court for legal error. *See State v. Pearson*, 876 N.W.2d 200, 204 (Iowa 2016); *City of Okoboji v. Iowa Dist. Ct.*, 744 N.W.2d 327, 330 (Iowa 2008); *Kuhlmann v. Persinger*, 154 N.W.2d 860, 864 (Iowa 1967). Concerning credibility determinations, we give particular weight to the district court's assessments. *See Guge*, 962 N.W.2d at 770. We review awards of attorney fees for correction of "erroneous applications of the law" and "for an abuse of discretion," which occurs "only when the court rests its ruling on grounds that are clearly unreasonable or untenable." *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 469 (Iowa 2010).

## III. Analysis

### A. Fair-Value Determination

#### 1. Scope of remand

The defendants argue the district court "erred in multiple ways" as to its remand ruling on transaction costs. First, the defendants argue "the district court failed to implement the mandate pursuant to the letter and spirit of the supreme court's opinion by refusing to allow [defendants] to appear, present evidence and be heard." As touched on above, the supreme court stated the following in its initial appellate decision:

> The district court, having determined that no transaction costs should be included in calculating the value of corporate assets, stopped short of making any finding about the deduction that we've now determined must be applied. We find the record lacking in sufficient detail for us to make this important determination. "[W]hen essential to effectuate justice, an equity case may be remanded for such further proceedings as the circumstances may require." *Dee v. Collins*, 235 Iowa 22, 28, 15 N.W.2d 883, 887 (1944). We thus remand for the district court to determine and apply the appropriate deduction of transaction costs to the value of the corporation's assets in setting the fair value of Susan and Peggy's shares.

*Guge*, 962 N.W.2d at 772 (alteration in original).

Homing in on the supreme court's statement that it found "the record lacking in sufficient detail for [it] to make this important determination," the defendants assert the district court, in reaching its decision, relied on the same record that was before the supreme court that the supreme court found insufficient to decide the issue, save the district court's credibility determinations on the competing opinions of the experts. The defendants also submit the supreme court did not specifically prohibit the district court from receiving further evidence, and so the supreme court must have "expected the district court to allow additional evidence." Long story

short, the defendants contend the record the supreme court found insufficient to decide the issue "can only be cured by the presentation of additional evidence."

As the supreme court has stated:

> It is a fundamental rule of law that a trial court is required to honor and respect the rulings and mandates by appellate courts in a case. A mandate to the district court contained in a decision of this court becomes the law of the case on remand, and a district court that misconstrues or acts inconsistently with the mandate acts illegally by failing to apply the correct rule of law or exceeding its jurisdiction. Moreover, a district court on remand is limited to do the special thing authorized by this court in its opinion, and nothing else.
> When presented with a mandate on remand, the district court's first task is to determine the precise action directed to be performed by the appellate court. In doing so, the court must not read the mandate in a vacuum, but must consider the full opinion of the appellate court and the circumstances the opinion embraces. In other words, [t]he rationale of the appellate court opinion must be examined to uncover the intent of the appellate court.

*Pearson*, 876 N.W.2d at 204 (alteration in original) (internal citations and quotation marks omitted). "Any action contrary to or beyond the scope of the mandate is null and void." *State v. O'Shea*, 634 N.W.2d 150, 158 (Iowa Ct. App. 2001). If the remand order limits the issues to be determined, the trial court on remand is prohibited from considering other issues or new matters. *In re Marriage of Davis*, 608 N.W.2d 766, 769 (Iowa 2000).

In its opinion, the supreme court observed the district court found transaction costs should not be deducted in reaching a determination of fair value despite the fact that "both parties' experts agreed that a deduction for transaction costs based on a hypothetical liquidation of Kassel Enterprises' assets should have been included." *Guge*, 962 N.W.2d at 771. The court then surveyed the figures proposed by the experts and the variables they relied upon to reach those figures. *Id.* at 771–72. Being persuaded by the opinion of both parties' experts that a

discount for hypothetical transaction costs should have been included, the court decided reversal on this issue was warranted. *Id.* at 772. Immediately before finding "the record lacking in sufficient detail" for the supreme court to go ahead and decide the issue, the supreme court noted the district court "stopped short of making any finding about the deduction that [the supreme court] determined must be applied," other than the district court's conclusion "that no transaction costs should be included." *Id.* Then the court noted "an equity case," such as this one "may be remanded for such further proceedings as the circumstances may require." *Id.* (quoting *Dee*, 15 N.W.2d at 887). Following the supreme court's signal to the *Dee* opinion, that court specifically delineated the further proceedings the circumstances required—receipt of evidence that was not before the supreme court due to the trial court's refusal to receive such evidence. *See* 15 N.W.2d at 887.

In this case, the supreme court did not complain it was without evidence it needed to make the determination, like it did in *Dee*, it only specifically noted the district court "stopped short of making any finding about the deduction." *Guge*, 962 N.W.2d at 772. Such a finding by the district court on the deduction that must be applied would unquestionably turn on the district court's credibility determinations as to the competing experts, which the supreme court would have readily deferred to had the district court reached the issue instead of stopping short. *See State v. Jacobs*, 607 N.W.2d 679, 685 (Iowa 2000) ("When a case evolves into a battle of experts, we, as the reviewing court, readily defer to the district court's judgment as it is in a better position to weigh the credibility of the witnesses."). To be sure, the court had previously noted it would give particular

weight to the district court's credibility determinations. *Guge*, 962 N.W.2d at 770. But because the district court concluded no deduction should be applied, a credibility determination was not made.

From our review, the insufficiency of the record cited by the supreme court was a lack of a determination on this issue by the district court. After all, the "supreme court is 'a court of review, not of first view.'" *Plowman v. Fort Madison Cmty. Hosp.*, 896 N.W.2d 393, 413 (Iowa 2017) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)) (reversing summary judgment but declining to decide an issue not decided by the district court when the district court granted summary judgment and did not decide issues that would have been necessary to decide had summary judgment not been granted). Finally, like the *Dee* court, the *Guge* court also provided simple instructions on remand that the circumstances here require, "for the district court to determine and apply the appropriate deduction." 962 N.W.2d at 772. That is exactly what the district court did here, and any non-collateral actions beyond that would have been null and void. *See O'Shea*, 634 N.W.2d at 158.

We reject the defendants' claim that the remand order mandated that they be provided an opportunity to appear, present evidence, and be heard. So we affirm the district court's decision to rule on the issue without further hearing.

### 2. Credibility Assessment

Next, the defendants argue "the district court's credibility assessment was baseless and erroneous." The defendants first appear to complain about the brevity of the plaintiffs' expert's opinion. They also claim that his opinion on real

estate commissions "was tied to the time[2] of the hearing and even then represented no investigation of the current 'market' or practice of real estate sales companies." Next, the defendants argue plaintiff's expert, Anthony Wagner, "had not investigated the information relating to the purported 2% real estate commission." Lastly, the defendants argue "Wagner's suggestion of one percent for 'remaining closing costs' had no evidentiary support." The defendants submit their expert conducted a "proper investigation" that should have been given more weight.

The record from the fair-value hearing contains the following on the transaction cost deduction. In a March 29, 2019 document authored by the plaintiffs' expert, Anthony Wagner, he explained the concept of a liquidation discount based on a forced liquidation of assets, which would include "various selling costs incurred by the business, such as appraisal fees, real estate commissions, auction fees and legal costs."

The defendants' expert, Brian Crotty, submitted an appraisal report, dated April 29, 2019, in which he utilized an asset-based approach and opined sales costs from liquidation should be considered and "[i]f the Company sold the real property it would likely incur transaction costs for broker fees and other transactional costs. We have estimated those costs to be 8% of the appraised value of the assets."

---

[2] *See* Iowa Code § 490.1301(3)(a) (defining "fair value" to mean "the value of the corporations shares" "[i]mmediately before the effectiveness of the corporate action to which shareholders object").

In a supplemental document dated May 29, 2019,[3] Wagner opined as follows concerning anticipated costs of liquidation:

> I am informed the terms of a court approved auctioneer's fees would be 2% plus out of pocket costs for the sale of the jointly held farm ground. I would anticipate the total costs of liquidation would be 3% of the net assets of the company. The additional 1%, or approximately $57,824, would be sufficient to cover any remaining closing costs, including advertising, updating abstracts, legals costs for the conveyance documents, and closing agents' fees.

Then, in August 2019, Crotty submitted a supplemental report. Therein, he asserted Wagner's 3% transaction cost deduction was flawed based on Crotty's "understanding" that the auctioneer agreed to a discounted rate. That "rebuttal report" did not otherwise meaningfully challenge Wagner's opinion.

In his testimony at the fair-value hearing, Crotty testified he considered "partial or full liquidation of the company in order to include discounts for potential sales costs." As to those sales costs, he contacted two independent companies—Hertz Farm Management and Peoples Company—"who gave . . . a very wide range and was described to . . . be anywhere from 6 to 10 percent depending on the size of the parcel, how quickly things wanted to be sold, and time for market." Then, "due to other sales costs potentially being included in there, whether it's legal, accounting, property taxes, [Crotty] ended up choosing the midpoint of that range, or 8 percent." Yet, Crotty agreed he is not an expert on transaction costs, and he basically acknowledged his criticism of Wagner's position, that it involved

---

[3] While the defendants seem to argue this letter was not a report and was "in no way in conformity with Iowa R. Civ. P. 1.500(2) or Iowa R. Evid. 5.703," they appear to agree error was not preserved on their motion to strike because it was never ruled upon. Furthermore, at the fair-value hearing, the document was offered into evidence by defendants' counsel and was admitted without objection.

a discounted rate, was based on something he "ha[d] been told" but did not know "for a fact."

In his testimony, Wagner agreed with Crotty that the fair-value determination should contemplate asset liquidation. As to the deduction he arrived at, he testified he has two other clients going through the auction process involving seven properties ranging from $800,000.00 and $3,000,000.00, and the auction company's flat rate was 3%. He also considered the auction of another parcel the parties were involved with, in which the auctioneer's price was 2% "plus some additional fees."

In its ruling following remand and procedendo, the district court recognized the variability in Crotty's opinion, which Crotty himself characterized as a "very wide range" depending on certain factors. The court also highlighted Wagner's identified flat rate of 3% based on the auction of several other parcels with lower property values than the assets in play here, and the fact that Crotty acknowledged the higher land value that was in play would provide more room to negotiate that rate. The court found Wagner's 3% was bolstered by the recent sale of land involving the parties at a rate of 2% plus some variable fees.

On our review, we find the district court's credibility assessment between the experts is supported by the record. While the defendants complain about the brevity of Wagner's opinion, Crotty's position on the transaction costs was no more bountiful than Wagner's. As to the defendants' complaint that Wagner's opinion was tied to the time of the hearing and did not include an investigation of current market practices, neither was Crotty's assessment on transaction costs specifically tied to immediately before the action commenced, other than his passive statement

in his reports that his entire "appraisal opinion" was based on the fair value as of May 16, 2018, and Wagner did rely on auction costs in other recent transactions. Turning to the complaints that Wagner did not thoroughly investigate the other sale involving the 2% and there was no evidentiary support for other variable costs being an additional 1%, the defendants ignore another piece of the puzzle, that Wagner considered the sale of several other parcels that had a flat rate of 3%, which the district court appears to have found the most persuasive, as do we.

Finding the district court's credibility finding supported by the record, we reject the defendants' challenge to the district court's credibility assessment and, by extension, its fair-value determination.[4]

B.      Appellate Attorney Fees

The defendants argue "the district court had no jurisdiction to award appellate attorney fees on remand and in any case abused its discretion in doing so."

*1.      Jurisdiction or authority*

On the jurisdictional piece, which can also be considered a question of authority, the defendants point out that, in the initial appeal before the supreme court, the plaintiffs' requested appellate attorney fees, the supreme court did not entertain the request,[5] and the supreme court did not include consideration of appellate attorney fees in its remand mandate.

---

[4] In reaching this finding, we have also considered the defendants' claims that the district court's credibility assessment and Wagner's testimony are "nonsensical," which they raise in a separate heading of their brief.

[5] From our review of the plaintiffs' initial and reply briefs and our experience with fee requests on appeal, it is most likely that the supreme court overlooked the requests, as the requests in both briefs were passively made in a brief statement

We have addressed a situation in which appellate attorney fees were not requested on appeal, "the opinion was silent on the issue," and there was no direction from the supreme court for the district court to consider appellate attorney fees following its affirmation of the district court. *See generally Simon Seeding & Sod, Inc. v. Dubuque Human Rts. Comm'n*, No. 17-1987, 2018 WL 4361000 (Iowa Ct. App. Sept. 12, 2008). There are two technical differences in the case before us. The first difference is that, here, the plaintiffs did forward a request for appellate attorney fees on appeal. However, that difference is not meaningful given the lack of substance in the request, the fact that the supreme court did not address it, and the resulting likely conclusion that the request was overlooked. The other difference is that there was no remand directive in *Simon Seeding* because the supreme court affirmed, whereas here the supreme court gave a remand directive for a determination of fair value that did not include consideration of appellate attorney fees.

After the issuance of procedendo in *Simon Seeding*, the plaintiff applied for attorney fees, and the district court denied the application, concluding it had no authority to grant the application absent a directive from the appellate court. *Id.* at *1. The plaintiff appealed, contending "the district court 'retain[ed] jurisdiction to proceed as to issues collateral to and not affecting the subject matter of the appeal.'" *Id.* (alteration in original). We surveyed a number of cases of the type of

---

in the conclusion section, with no free-standing, substantive portion of the briefs being dedicated to plaintiffs' request for appellate attorney fees. This conclusion is made even more likely given the fact that the supreme court did not address appellate attorney fees after it provided a detailed analysis on the award of trial attorney and expert fees.

which attorney-fee awards, including appellate attorney fees, are available to determine whether the district court had authority to award appellate attorney fees following an appellate decision. *See id.* at *1–2. Those cases included the *Schaffer v. Frank Moyer Construction, Inc.* appeals. *See generally* 628 N.W.2d 11 (Iowa 2001) (*Schaffer II)*; 563 N.W.2d 605 (Iowa 1997) (*Schaffer I*). In *Schaffer I*, the supreme court reversed and remanded for further proceedings consistent with its opinion on the issues it considered, which did not include appellate attorney fees. *See* 563 N.W.2d at 608. Following the remand, despite the fact that "the remand order did not explicitly direct the district court to consider an award of appellate attorney fees," *Simon Seeding*, 2018 WL 4361000, at *2, the district court entered one anyway, a decision that was subsequently challenged in *Schaffer II*. *See* 628 N.W.2d at 14, 22. The supreme court rejected that challenge, ruling that when a statute "permits[6] appellate attorney fees and given [the] current practice of allowing the district court to award such fees, . . . the district court did have authority to award appellate attorney fees." *Id.* at 23. Following the *Schaffer* appeals and others, we found the district had jurisdiction to consider the collateral request for appellate attorney fees incurred in the first *Simon Seeding* appeal. 2018 WL 4361000, at *2.

*Simon Seeding* and the cases it relies upon are instructive here. *Schaffer I* concluded with the supreme court not weighing in on appellate attorney fees and not specifically directing that the issue be considered on remand. Had the

---

[6] While the defendants attempt to distinguish cases in which awards are mandatory from cases in which awards are discretionary, based on the language used by the supreme court, the question is whether a statute "permits" an award. Awards are permitted whether they are mandatory or discretionary.

supreme court done so, whether by appellate disposition or remand, their input would have become the law of the case. *See id.* at *2 n.2. Yet, the district court awarded appellate attorney fees on remand without being directed to do so, which the supreme court found it had authority to do in *Schaffer II.* When the supreme court does not weigh in on the issue by providing its own disposition or ordering it to be considered on remand, it remains an issue collateral to the remand order that is fair game on remand. *See id.* Because that is the state of affairs in this case, we conclude the district court had authority to entertain the plaintiffs' application for appellate attorney fees.

### 2. Exercise of discretion

As to the award itself, the defendants first complain the court "gave no reason for exercising his discretion other th[an] he had awarded such fees below." Yet, they go on to agree the court noted its considerations that "an appropriate reduction should be made for unsuccessful claims and claims for which fees are not recoverable," whether the hours expended were reasonable, and whether the plaintiffs' counsel submitted "inadequate documentation." They also agree the court specifically considered the relative successes of the parties on appeal and the lack of detail in the fee affidavit submitted by counsel. But they argue the lack of specificity in the itemization should have made the court unable to justify a fee award, the application was "very late," and the district court "ignored the 'better practice' of giving the appellate court the prerogative of determining whether appellate fees should be awarded."

In determining the award of appellate attorney fees to the plaintiffs, the court considered the facts that the plaintiffs were already awarded $93,620.74 in trial

attorney fees[7]; the appeal involved an issue of first impression; both parties found some success on appeal with success going to the plaintiffs on two issues and success going to the defendants on two issues; and the fee affidavit lacks detail, "which can commonly be expected considering the nature of appellate litigation." Based on its considerations, the court granted the plaintiffs appellate attorney fees in the amount of $14,290.25, as opposed to $57,161.00 as requested in the application.

"A fee award will be reversed only on 'grounds that are clearly unreasonable or untenable.'" *Guge*, 962 N.W.2d at 777 (citation omitted). While the defendants forward generalized, unspecific complaints, their only real complaint is that the fee itemization lacked detail. But the district court's decision shows this was meaningfully taken into consideration, in conjunction with other factors, all culminating in the court's heavy reduction of the plaintiffs' fee request. On our review, we are unable to conclude the award was based on grounds that are clearly unreasonable or untenable, so we affirm.

## IV.     Conclusion

Finding no cause for reversal on the issues properly presented for our review, we affirm.

**AFFIRMED.**

---

[7] This award was affirmed by the supreme court. *Guge*, 962 N.W.2d at 777.